## NATIONAL SURETY COMPANY v. E. J. WINSLOW.
## GRANT, SMITH & COMPANY AND OTHERS, GARNISHEES.
## PAUL J. KALMAN AND OTHERS, APPELLANTS.[1]

### June 13, 1919.

### No. 21,261.

**Contract — equitable lien.**

1. The contract recited in the opinion, disclosing certain financial and business relations between defendant and interveners, *held* not to vest in the latter any right, by way of equitable lien or otherwise, to the fund in litigation superior or paramount to that of a garnishment creditor.

**Partnership — joint adventure.**

2. The contract did not create the relation of joint adventure or copartnership and no right to the fund arises from any source of that kind.

**Assignment of debt — statutory presumption of fraud — burden of proof.**

3. The presumption created by G. S. 1913, § 7017, that an unfiled assignment of a debt is fraudulent as to creditors of the assignor can be overcome only by facts showing that the assignment was made in good faith and for a valuable consideration, and the burden of proof is with the assignee.

**Same — evidence.**

4. Evidence that the assignor was indebted to the assignee at the time of the assignment in an amount exceeding the assigned debt, with no evidence that the assignment was made and accepted in pro tanto discharge of the debt, or as good faith security for its payment, and no evidence that the assignment was not colorable merely, *held* insufficient to require the conclusion that the presumption was overcome.

**Same — evidence insufficient.**

5. The mere existence of the indebtedness from the assignor to the

[1] Reported in 173 N. W. 181.

assignee will not justify the court in assuming that the assignment was made in discharge thereof or as further security for the payment of the same, or in good faith.

#### Same — consideration — recital of value received.

6. The recital in the assignment of "value received," though as between the parties prima facie evidence of a valuable consideration, and a sufficient expression thereof to satisfy the statute of frauds, is not evidence against third persons in proof of a consideration in fact, or of the good faith of the transaction, sufficient to overcome the statutory presumption of fraud.

Paul J. Kalman and George E. Routh, Jr., partners as Paul J. Kalman Company, filed their complaint in intervention in the attachment and garnishment proceedings in the above entitled action in the district court for Ramsey county. The facts are given in the opinion. The case was tried before Brill, J., who made findings and as conclusions of law found that the contract of April 28, 1915, did not create an equitable lien upon the money in the Capital Bank, nor upon the money in the hands of Grant, Smith & Company; that the instrument of assignment of December 27, 1915, was void as against the garnishment of plaintiff; that plaintiff was entitled to satisfy its judgment from the funds disclosed by the garnishees. Interveners' motion for amended findings was denied. From the judgment entered pursuant to the order for judgment, interveners appealed. Affirmed.

*Moore, Oppenheimer & Peterson,* for appellants.

*Orr, Stark & Kidder,* for respondent.

BROWN, C. J.

At the time of the commencement of this action, on December 27, 1915, a garnishee summons was duly issued therein to and subsequently served upon the Capital National Bank, a corporation, and Grant, Smith & Company, a copartnership. The bank subsequently disclosed that it had in its possession and control belonging to defendant in the action the sum of $957, made up of a bank account subject to defendant's check. The service of the garnishee summons upon Grant, Smith & Company was defective, but when the matter came before the court below there was a waiver of the defect by consent of the parties, and dis-

closure was then made to the effect that on the date of the attempted service the copartnership was indebted to defendant in an amount exceeding $3,000.

Some question was raised on the argument in this court as to the waiver of the defect in the service, but the trial court expressly found such waiver by all the parties, and our examination of the record leads to the conclusion that the finding is fully supported by the facts there disclosed. So we pass that feature of the case without further comment.

Paul J. Kalman & Company, a copartnership, appeared in the action as interveners and by their complaint laid claim to the money on deposit in the garnishee bank in the name of defendant and subject to his check, and also to the indebtedness disclosed by the Grant, Smith & Company copartnership. Issue was joined on the claim so presented, and after due trial thereof the court, upon findings of fact made the basis of interveners' claim, as conclusions of law held that the claim was not valid as against plaintiff in the action, and judgment was ordered accordingly. Judgment was so entered and interveners appealed.

Interveners' claim to the money in the bank to the credit of defendant, and to the indebtedness due him from Grant, Smith & Company, is founded upon a contract with defendant the terms and provisions of which will be presently stated, which they insist vests in them: (1) A right to the money and the indebtedness similar to an equitable lien, superior to the rights or claims of the general creditors of defendant; and (2) that the contract vested in them a right to the money and indebtedness as parties jointly interested in the transaction out of which the same accrued. They also claim the indebtedness under and by virtue of an express assignment made by defendant and accepted by Grant, Smith & Company prior to the service of the garnishee summons herein. We dispose of the questions in the order stated.

1. The contention that the contract referred to gives rise to an equitable lien upon the funds in question in interveners' favor, or a right similar to such a lien, is not sustained. We find nothing in the contract taken as a whole to justify the conclusion of the creation of any relation between defendant and interveners, other than that of debtor and creditor, with the privilege on the part of interveners, as creditors, obviously to guard against a diversion or dissipation of the money advanced by

them, to supervise and in effect direct the expenditure of the money earned by defendant under the contract, as well as the funds so advanced. And it is clear that a relation of that character, though coupled with the supervisory right mentioned, can vest in interveners no legal or equitable personal claim to the funds arising out of the transaction. .

The contract recites that defendant has secured or is about to secure contracts for laying the flooring in certain buildings under construction in the city of St. Paul, and, to enable him to carry out and perform the same, interveners undertook and agreed to advance all necessary funds for material and labor, not exceeding the sum of $10,000. It was provided that of the money so advanced a certain sum should be used for the purchase of necessary machinery, and the balance, or so much thereof as might be necessary, to the payment exclusively of work, labor and material used in the particular contracts. Defendant agreed to devote his time to the performance of the contracts, and out of the money received therefor to pay himself the sum of $200 per month, to be charged as a part of the expense of performance. All money advanced by interveners, together with that received by defendant on the contracts, was required to be deposited in his name in a bank satisfactory to the parties, to be drawn out on his check, countersigned by interveners. This method of withdrawing the funds from the bank was to continue until all advances were repaid to interveners, when defendant could withdraw the money by his individual check. The interveners reserved the right to keep the books of account in reference to the work, but it was expressly stipulated that such books should be the sole property of defendant and free of access to him. It was further agreed that, if defaults should be made in payments due on the contracts being performed by defendant, interveners were authorized "as the agents and representatives" of defendant to institute in his name all such actions or proceedings as might be necessary to enforce the same; and further, that if defendant found it necessary and he should in fact file liens against the property covered by the contracts he would on the completion thereof assign the same to interveners as further security for the payment of advances made by him, or "otherwise satisfactorily secure the said advancements." It was also agreed that defendant should not at any time "use or involve in any way the credit or name of the second parties (interveners), nor shall he at

any time attempt to represent them, as their agent, or in any manner obligate them by reason of said contracts or the work thereunder."

And further, that: "The second parties (interveners) shall in no wise be deemed obligated for the fulfillment in any wise of any of the terms of said contracts for the doing of the work heretofore mentioned."

It was lastly agreed that the net profits derived from the performance of the contracts should be divided equally between the parties, and the basis for arriving at or computing the same was stated and set forth. The amount interveners received by such division was made their compensation for the advances made to defendant, though the contract further provided that if they failed to advance the full amount agreed upon they should have no share in the profits, and only be entitled to a return of the amount actually advanced with interest at the rate of six per cent.

As heretofore stated,[1] we can find no basis from the terms and provisions of the contract which properly may be construed as vesting in interveners an equitable lien upon or other right to either the bank account or the Grant, Smith & Company indebtedness. The contract reserves no such right in express terms and none can be spelled out by necessary implication; there is no distinct or other appropriation of either to the payment of interveners' claim for advances. The whole scope and effect of the various stipulations of the contract by which interveners were given a supervisory control over the performance of the contracts to facilitate which the advances or loans were made, was in protection of their granted right to have the money so advanced devoted to the particular purpose, and not diverted to the performance of other contracts, in which interveners had no interest, or the personal uses of defendant. No language of the contract grants to interveners any other special interest in the funds, and, so long as they are used in connection with the particular contracts, the exclusive control thereof is vested in defendant. The conclusion therefore seems clear that the claim of equitable lien upon either of the funds must fail.  5 C. J. 909;  Jones, Liens (3d Ed.) § 50 et seq.; Adams v. Citizens' Bank, 84 Fed. 270; Plymouth Cordage Co. v. Seymour, 67 Minn. 311, 69 N. W. 1079; Hillsdale Distillery Co. v. Briant, 129 Minn. 223, 152 N. W. 265; Christmas v. Russell, 14 Wall. (U. S.) 69, 20 L. ed. 762; Stearns v. Quincy Mut. Fire Ins. Co. 124 Mass. 61, 26 Am. Rep. 647.

1[Page 68.]

2. In our view of the case the only theory on which interveners may plausibly assert a claim to the specific fund, is that presented by their second contention, namely, that they were joint parties to the several contracts to promote which the advancements were made, therefore joint owners of the bank fund and also the Grant, Smith & Company indebtedness. But we are unable to sustain their contention in that respect. The express terms of the contract remove the case entirely from the rule of joint adventure or the copartnership relation. A joint adventure can arise only by contract or agreement between the parties to join their efforts in furtherance of a particular transaction or series of transactions. And in the absence of express limitations in that respect each party to such adventure is subject to all losses and liabilities, and entitled to share equally in the profits of the undertaking. The relationship is substantially that of a copartnership. The contract in question clearly creates no such relationship. The terms thereof expressly exclude interveners from all liability for the performance or failure to perform the contracts, and expressly declare that defendant shall have no authority to bind them by contract or otherwise in respect thereto. Interveners assume none of the burdens of performance, or the control thereof, other than such as they may deem necessary to prevent a wrongful diversion of the funds advanced, and for a breach of any of the contracts they would in no way be liable either jointly with defendant or otherwise. In short, the only interest interveners have in the contracts or the performance thereof is the stipulated share of the net profits. But that does not create a copartnership or a joint adventure. T. R. Foley Co. v. McKinley, 114 Minn. 271, 131 N. W. 316; Richardson v. Hughitt, 76 N. Y. 55, 32 Am. Rep. 267. They are entitled to a return of the money loaned or advanced, and stand to lose only in the event there shall be no net profits. The money advanced is not contributed to the enterprise, and must be repaid whether the venture is a success or a failure.

3. A short time prior to the commencement of the action, on the same day, defendant made a formal written assignment to interveners of the Grant, Smith & Company indebtedness, and before the service of the garnishee summons Grant, Smith & Company accepted the same by a written indorsement thereon. The assignment recited a consideration in

the usual form of "for value received," and on the face was a valid transfer of defendant's interest in the indebtedness. It was not, however, filed in the office of the city clerk, as required by G. S. 1913, § 7017, prior to the service of the garnishee summons, and the last question presented by interveners is whether a claim to the fund superior to the garnishment was thereby vested in them. We think the questions must be answered in the negative.

The statute cited, G. S. 1913, § 7017, provides that every assignment of a debt, unless the same be in writing and filed with the clerk of the town or municipality in which the assignor resides, shall be presumed to be fraudulent and void as against his creditors, unless those claiming thereunder make it appear that it was made in good faith and for a valuable consideration.

The facts are not in dispute. At the time of and for some time prior to the assignment plaintiff was a creditor of defendant, its claim being in the form of a judgment and the subject matter of this action. At the time of the assignment and acceptance of the Grant, Smith & Company, defendant was indebted to interveners in a sum exceeding $20,000. But no evidence was offered to show the purpose of the assignment, either that it was in discharge pro tanto of that indebtedness, or that it had for its support any other valuable consideration. Nor was there any evidence that the assignment was made in good faith, or without purpose to defraud or delay creditors. The trial court found in this respect, after stating the facts as just recited, that "nothing appears as to the consideration for said instrument of assignment, nor does anything appear as to the purpose or intent of the parties in making said instrument." And the court held that the failure to file the assignment coupled with the lack of proof as to consideration and good faith, rendered the same void as to plaintiff.

The statute on this subject is clear, and declares that an assignment of the kind shall be presumed fraudulent as to creditors when not properly filed, unless the assignee shall make it appear that it was given for a valuable consideration and in good faith. On the facts of the case we are clear that the learned trial court was right in giving effect to this presumption of bad faith. The burden was upon interveners to overcome it. Leonard v. Farrington, 124 Minn. 160, 144 N. W. 763.

The conclusion that they failed in sustaining the burden is a necessary result from the evidence, unless we are to hold from the naked fact that at the time of the assignment defendant was indebted to interveners in an amount exceeding the debt assigned, that the trial court was bound to assume therefrom that the purpose of the parties was to discharge that debt to the extent of the amount of the assignment, or as security for its payment, and also was bound to assume that the transaction was in good faith and not colorable or for the purpose of preventing the creditors of defendant from reaching the assigned debt by garnishment or otherwise. But we are unable to hold that the statutory presumption of fraud may be overcome by inferences based upon that foundation. The formal recital in such an instrument of "value received," though as between the parties prima facie evidence of the passing of a valuable consideration, and a sufficient expression thereof to satisfy the statute of frauds, D. M. Osborne & Co. v. Baker, 34 Minn. 307, 25 N. W. 606, is not evidence against third persons in proof of a consideration in fact, or of the good faith of the assignment. Watkins v. Edwards, 23 Tex. 443, 448; Kimball v. Fenner, 12 N. H. 248; Prescott v. Hayes, 43 N. H. 593; Nolen v. Gwyn, 16 Ala. 725; Hubbard v. Allen, 59 Ala. 283; Bolton v. Johns, 5 Pa. 145, 151, 47 Am. Dec. 404; Boone v. Chiles, 10 Pet. 177, 9 L. ed. 388.

The conclusion, therefore, must be that interveners failed in sustaining the burden cast upon them by the statute. Conroy v. Farree, 68 Minn. 325, 71 N. W. 383; Mattox v. Curtis, 140 Minn. 506, 167 N. W. 424. The case of Baylor v. Butterfass, 82 Minn. 21, 84 N. W. 640, is not in point. The deficiency in the evidence here pointed out was supplied in that case. The consideration as well as the good faith of the transaction was disclosed.

Judgment affirmed.