FRANK ARNOLD v. LENNICE KENDRICK DE BOOY
AND OTHERS.[1]

December 19, 1924.

Nos. 24,128, 24,129.

**Operation and improvement of farm by cotenant.**
In an action to enjoin defendants from interfering with plaintiff's personal property and in an action for partition, tried together, findings were made to the effect that no partnership or joint venture existed between the parties under which defendants could claim any interest in such personal property procured and used by plaintiff upon a farm owned by plaintiff and the two incompetent defendants as tenants in common; and, in the partition suit, that plaintiff should have that part of the farm whereon he had erected buildings and should have sufficient of his cotenants' shares in the land to reimburse him for encumbrances paid off and clearing made by him. It is *held*:

[1]Reported in 201 N. W. 437.

(1)  There can be no partnership or joint venture without contract express or implied.  The finding that none existed is supported.

(2)  Where one cotenant farms a tract of land without excluding the others, the crops so raised belong to him and he is not liable to his cotenants for rents and profits.

(3)  Conceding plaintiff stood in a confidential relation to his weak-minded brother and sister, his cotenants of the farm upon which all made their home, the stock and personal property he used in the farming were his, and his operation of the farm under the circumstances did not withdraw from him his legal rights of nonliability for rents and profits.

Two actions in the district court for Hennepin county, one for an injunction restraining defendants from asserting any right to certain personal property, to recover $644 damages and $250 special attorneys' fees; the other for partition of certain premises.  The cases were tried together before Leary, J., who ordered judgments in favor of plaintiff.  From the judgments, defendants appealed. Affirmed.

*George T. Simpson,* for appellants.

*Charles F. Keyes* and *P. L. Solether,* for respondent.

HOLT, J.

Two suits were tried together.  The one is for partition of an 80-acre farm and the other is to enjoin defendants from disturbing plaintiff's possession of the produce raised from the farm and certain personal property thereon.  Findings were in favor of plaintiff in each case.  Defendants appeal.

A brief outline of the facts is required.  Andrew Arnold owned an 80-acre farm near Mound in Hennepin county, when he died, in 1911, testate.  Plaintiff and the defendants John and Anna Arnold were willed both the farm and personal property, share and share alike.  There were other children, but they received no inheritance. John and Anna were always weak-minded, capable of doing some work when directed by others.  They had always lived with the father on the farm, and as long as he was with them as manager the farm was sufficient for their wants with such help as plaintiff

occasionally gave. After the father's death, they continued in possession and eked out a precarious subsistence. Plaintiff left home about 1895, worked at Maple Plain until 1903, when he homesteaded 160 acres in North Dakota and subsequently purchased 160 acres more, raising grain. When the father died, 6 or 7 cows were kept on the farm, a worthless team, and a few dilapidated farm implements. Plaintiff came home, stayed two weeks, helped John put up wood for the winter, saw to the probating of the estate, and raised the needed money by mortgaging the farm for $300, John and Anna joining in the mortgage. In 1914 the dwelling house burned. Plaintiff again came down, and caused another home to be built. Things seemed to go from bad to worse for John and Anna. And finally in 1916 plaintiff concluded to sell his Dakota holdings, and move onto this farm, making his home with his brother and sister. At that time there was none of the personal property left by his father in existence, except one cow and a binder, and the latter seems to have been originally contributed by plaintiff.

When plaintiff rebuilt the dwelling house it was understood that the third upon which it was erected would be claimed by him if partition was had. Since that time plaintiff has erected a barn, a granary, hog and chicken-house and has cleared up and improved the farm. He has also bought a 25-acre tract near by which he has tilled in connection with the 80-acre farm. He has now stocked the farm well, and by suitable tillage greatly improved its productiveness. He realized somewhere around $5,000 for his North Dakota property, all of which he has used in paying some encumbrances on the farm, erecting the buildings, buying stock and farm implements, and in the purchase of the 25 acres. The three have lived as one family, Anna doing the housework in a fashion, and John helping with chores and some of the other work when he felt like so doing. Of late years his health has been poor. Anna appears to have been able to earn some money by outside work, and she used it, or part of it, for household expenses. John was 54 years old at the time of trial, plaintiff 52, and Anna 48.

From the record the impression is formed that as John and Anna grow older the mental infirmity, if not actually increasing, renders them more obstinate and hard to deal with. It is suggested that plaintiff also is lacking in mental capacity. His achievement as a farmer, both in North Dakota and with this farm, clearly indicates that he is possessed of more than the average mental and physical vigor. However, continually living with and caring for these two subnormal people may have affected his disposition so that to neighbors his treatment of his brother and sister appeared inconsiderate and harsh. At any rate, in the probate court, John and Anna were declared incompetent, and the other defendant was appointed guardian of their persons and property. The guardian immediately notified persons with whom plaintiff dealt that she claimed the right to collect the prices for produce and stock sold from the farm, and she actually collected a part and seized, carried away and sold some of the crops. This started the trouble, and these suits followed.

In the injunction suit the court awarded defendants their share of the personal property remaining from the estate at the time plaintiff took hold in 1916, namely, each an undivided interest in one cow and the binder; found that John and Anna owned two cows which were calves when plaintiff came there in 1916, and also owned the household furniture and kitchen utensils then on the farm; that all the other stock and personal property upon the farm belonged to plaintiff; also the amount due from certain persons for stock and produce sold which the guardian had collected, the value of the grain taken by her, and directed that, for the amount thereof, plaintiff should have judgment against her personally and as guardian, and that the guardian should be enjoined from molesting plaintiff's personal property. It was also found that defendants had no interest in or right to any part of the 25 acres plaintiff had purchased while living on and tilling the 80-acre farm, and further that since 1916 the three had lived on the farm as members of one family, plaintiff being the head thereof; that there was no express or implied promise that payment should be made by one to the other for what had been paid for household expenses;

that for services rendered by one to the other, and for doctor's and nurse's bills paid by plaintiff prior to 1916 such were rendered and such paid without expectation of remuneration.

In the partition suit the court determined the amount John and Anna had contributed to an improvement (a well) made after 1916 upon that third of the 80 acres where the buildings are; also found that by clearing the whole farm plaintiff had increased the value of each undivided third thereof in the sum $334, and that he had paid a mortgage given by all three in the sum of $363, and one of $661.53, which latter included a debt of John and Anna alone of $73.26; that John and Anna own no property except their share in this farm and are unable to pay plaintiff cash for their proportion of the amount he has expended in improvements and the satisfaction of the mortgages; that plaintiff since 1916 has operated the farm alone and not in conjunction with John and Anna, either as partnership or as a joint enterprise, and in so doing he did not oust them or deny their ownership of an undivided two-thirds of the farm; that he has not received any money or property for or on account of them and is not indebted to them for rent, profits or wages; and that plaintiff did not make or receive any profits of said farm from 1916 to the present time. And partition was ordered so that plaintiff should receive the one-third thereof upon which are the buildings and as much additional land as would make his share, exclusive of the value of the buildings and improvements, worth $1,303.19 more than the combined portions of John and Anna. That is, in effect the share of John and Anna was each reduced from one-third in area so as to liquidate the sum of $651.59 which plaintiff should be paid for clearing and discharging encumbrances.

We think counsel for appellants has correctly discerned the two propositions decisive of the cases, viz.: (a) Was plaintiff's operation of the farm a joint enterprise; and (b) was plaintiff's relationship towards John and Anna of such confidential nature that he must be held to have worked and expended his money in their behalf and be accountable to them for the result?

The court found the operation of the farm was not a joint enterprise. We think the finding amply sustained. A partnership or

joint enterprise is created by agreement express or implied. National Surety Co. v. Winslow, 143 Minn. 66, 173 N. W. 181. There is no pretense here of an express agreement, and the surrounding circumstances negative an implied. We need not consider the intention of John and Anna, for, in order to find an implied agreement, it is necessary to find assent by both parties either in words or conduct or one inferred by law. No rational being could infer that plaintiff, in expending his own hard earned money for live stock, farming implements and buildings, intended to go into partnership or joint venture with John and Anna, two persons who had demonstrated their incapacity to even eke out a mere existence by their own efforts. The law does not make tenants in common partners. Under the Uniform Partnership Act, subdiv. 2, § 7, c. 487, p. 814, L. 1921, evidence of tenancy in common does not in itself establish the existence of a partnership whether they do or do not share in the profits made by the use of the property. Each tenant in common had the right to occupy the common property and owns the crops he raises thereon, and is not liable for rents or profits, unless he has excluded his cotenants or has agreed to share with them. Sons v. Sons, 151 Minn. 360, 186 N. W. 811. Defendant relies upon Sons v. Sons, 145 Minn. 367, 177 N. W. 498, but there was a finding of contract of joint venture or joint enterprise. In MacFarlane v. MacFarlane, 82 Hun, 238, 31 N. Y. S. 272, a going business was left to two sons, they ran the business jointly, and divided the profits, and from these circumstances the finding they intended to be and were partners was held to have sufficient support.

It may be conceded that plaintiff stood in a confidential relationship to John and Anna because of their mental condition, but that will not lead to a different result from that arrived at by the learned trial court. Plaintiff made no agreement with his brother and sister to be assailed under the principle of Shevlin v. Shevlin, 96 Minn. 398, 105 N. W. 257. The only matter that savors of their assent to plaintiff's acts is in regard to the erection of the buildings and the improvement of the farm which the court finds was done with their knowledge and consent. But plaintiff acquired no greater rights than the law gives a cotenant because of this. In

the absence of such finding the court, under the circumstances shown, would no doubt have been compelled in partition proceedings to award plaintiff that part of the farm upon which he, at his own expense, erected the necessary buildings so that not only he but especially John and Anna might have a home and a living so long as they were content to stay on the farm. The same consideration justifies remuneration for liens discharged and necessary clearing increasing the value and productiveness of the land. So far as a cotenant's rights in respect to the possession and use of the land are concerned, the law makes no distinctions on the ground of confidential relations between him and his cotenants. We have been cited to no authority so holding, and no reason suggests itself why there should be.

As to personal property, there is no evidence that plaintiff took over any except the binder he originally provided, which of course is worthless now, and the one cow owned in common. The two cows which were calves, when plaintiff took charge, were awarded John and Anna, likewise all the household furniture then in possession. The evidence furnishes no basis for saying that the profit from those three cows have all gone to plaintiff, or if it did that it is of any consequence to consider in this litigation or even that he exercised more control over them than did John or Anna. There being no partnership or joint venture in the operation of this farm since plaintiff came upon it, of course he cannot be accountable for the stock he purchased with his own funds or the increase or profits therefrom.

The record herein appears to us to vindicate plaintiff from any charge of overreaching his unfortunate brother or sister. On the contrary, it indicates a high appreciation of his duty towards them. Even when his father was living he was mindful of the family's wants and aided them. When misfortune came he went to their rescue, rebuilt the burned home, paid doctor's bills and nurses, and when finally John and Anna were on the verge of becoming public charges he gave up his own home, sold his property and moved down here to provide them a home and support. In doing so he made many sacrifices and subjected himself to the daily association with

and control of subnormal persons. This was no light burden, and if at times his treatment of the brother or sister to outsiders might have seemed unkind, we think there has been nothing revealed in which he has taken any pecuniary advantage or profits from property of theirs nor has any conduct of his been shown which is subject to censure from a moral standpoint.

The conclusion upon the two controlling propositions in the case obviates a consideration of the other assignments of error. No property of John and Anna of any consequence whatever having come into the hands of plaintiff out of which any profits could be made, it is evident that no concern need be given whether the remedy of accounting or any other remedy is applicable. They have no cause of action against plaintiff. The only doubtful matter presented by the appeal relates to that part of the judgment ordered in the partition suit which subtracts from defendant's shares and adds to plaintiff's, so as to discharge the claim or lien plaintiff otherwise would have and which he would be entitled to have paid out of the proceeds of the sale, had actual partition not been feasible. Under the condition John and Anna are in we think the method pursued was for their best interests. They get their shares clear, and can dispose of the same whenever the price appears the most attractive.

The order in each case is affirmed.