HENRY KITZMAN v. POSTIER & KRUGER COMPANY, INC.[1]

January 27, 1939.

No. 31,872.

[1]Reported in 283 N. W. 542.

*Fraser & Fraser,* for appellant.
*A. H. Clemens,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff sued for an accounting. Issues were duly made and trial had. The court's findings were for defendant. Plaintiff moved for leave to take further testimony, for amended findings, or, in the alternative, for a new trial. The motion was denied except for certain minor changes in the findings. Judgment was thereupon entered in conformity with the findings as amended, and plaintiff appeals.

The facts may be summarized as follows: In 1917 West and Postier, copartners, were engaged in the garage business at Rochester. Plaintiff had an exclusive agency for the sale of Buick cars in certain territory, including that city. These parties entered into an agreement whereby plaintiff was to finance the purchase of cars and, when by him deemed appropriate, to extend credit to purchasers. The cars when received were to be kept for sale in the showroom and garage of the copartnership. All parties agreed to render assistance in making sales and closing deals. The profits were to be divided from time to time, one-half to plaintiff and one-half to the copartnership. In 1921 defendant was incorporated and succeeded to the interests of the copartnership. Hereafter we shall refer to it as defendant even if the matter relates back to the former copartnership.

When cars were received defendant prepared them for sale, and, when deemed necessary to effectuate sales, promised and later performed various services, made mechanical adjustments, and furnished repairs to purchasing customers over a period of time after sale, this in order to gain business and also to give satisfaction to customers. In the automobile business this is referred to as "servicing" of cars. This servicing was charged to the enterprise by defendant in its books of account. Plaintiff had access to the

books and records in respect to these items and charges but made no complaint respecting the same until just before the enterprise was terminated in August, 1929. Whenever used cars were taken in exchange as part payment of a newly purchased car they were overhauled, repaired, and improved as to fitness for use and general appearance for future sale. The items of labor, parts, and expenses pertaining to such overhauling and repairing were entered upon defendant's books as charges against the enterprise and were treated the same as the servicing charges hereinbefore mentioned. When sales were made, if the transaction was for cash, plaintiff received all of it; if partly cash and partly on time, whether evidenced by notes or conditional sales contracts, all such cash and papers were turned over to plaintiff, all such deals being subject to his approval. He accepted these at face value, and all of them were considered and treated by the parties as plaintiff's property. As sales were made and transactions closed the parties figured the various items going into the same. The net cost of the car, servicing charges by defendant, and other items were deducted from the sale price and the balance equally divided. Plaintiff would pay defendant the charges so made and its part of the profits so realized out of the cash and bills receivable so obtained. The court found that under this arrangement there was some $4,200 due defendant from plaintiff.

In December, 1927, defendant credited plaintiff provisionally in the amount of $2,500. This was set up as a separate account and was treated as a reserve to cover losses on paper "that defendant * * * had especially recommended to plaintiff." This was done in spite of the fact that all notes and other instruments received in the many car deals here involved were turned over to plaintiff and accepted by him the same as cash. This account was set up, so defendant contended and the court found, to the end that defendant would share some of the losses which might occur upon such paper. There was no definite agreement but "merely a vague understanding that defendant would stand back" of certain items as to which the reserve was to operate. This account later from time to time was increased to more than $3,800. Out of it the

court found that there should be $977.19 credited to plaintiff, the balance being awarded to defendant.

Upon these findings judgment was ordered for defendant and "against plaintiff for the sum of $6,978.74."

As readily will be seen, the principal and determinative question is one of fact, *i. e.*, are the facts found by the court sustained by the evidence?

■ We may accept as valid plaintiff's statement of the law, that each of the parties to this cause occupies to the other a position of trust and as such "must exercise the most scrupulous good faith toward each other." Hence, "in any dispute touching any transaction by which one partner seeks to benefit himself at the expense of the firm, he is required to show, not only that 'he has law on his side, but that his conduct will bear to be tried by the highest standard of honor.'" McAlpine v. Millen, 104 Minn. 289, 300, 116, N. W. 583, 587. And we consider it immaterial whether the relationship was that of a general partnership or, as determined by the court, a joint enterprise. Obviously, the same rule should apply in either case. "A joint adventure can arise only by contract or agreement between the parties to join their efforts in furtherance of a particular transaction or series of transactions. And in the absence of express limitations in that respect each party to such adventure is subject to all losses and liabilities, and entitled to share equally in the profits of the undertaking. The relationship is substantially that of a copartnership." National Surety Co. v. Winslow, 143 Minn. 66, 71, 173 N. W. 181, 183; Mechem, "The Law of Joint Adventures," 15 Minn. L. Rev. 644.

■ The agreement between the parties, fortified and demonstrated as it is here by their subsequent conduct, must determine their respective rights and liabilities. It does not necessarily follow that because they were to share profits out of their joint efforts that thereby they became copartners for all purposes. While "it was at one time thought that an agreement to bear losses, as well as to share profits, was essential to the existence of the partnership relation, * * * the modern conception of a partnership as a joint enterprise with a view of gain leaves the question of losses to

be determined from the evidence, * * *." McAlpine v. Millen, 104 Minn. 289, 298, 116 N. W. 583, 586.

■ With these principles in mind and applying them to the facts found by the court, there remains only the question of determining from the record whether the court's findings are sustained. The record is a lengthy one, and there are numerous exhibits. To summarize all the conflicting claims would extend this opinion beyond reasonable limits. After all, the burden is upon the appellant to establish "that there is no evidence reasonably tending to sustain the findings of the trial court." McAlpine v. Millen, 104 Minn. 300, 116 N. W. 587. Generally speaking, there is very little of conflict in the evidence. It is perfectly clear that plaintiff was the owner of all bills receivable, and he treated and considered them as his exclusive property. The court charged against defendant all items which it had especially recommended as good paper and later was found not to be. Obviously plaintiff is in no position to complain as to those items. And as defendant is not complaining we need not consider whether the court was too exacting in charging defendant with almost $1,000 of losses on paper recommended by it. Good faith on defendant's part appears throughout. The trouble seems to be that plaintiff belatedly found a lot of the paper taken and accepted by him was uncollectible. The parties severed their relations in August, 1929. This action was not commenced until January, 1935. The intervening years were full of difficulty, as everyone well knows. But those losses were not traceable to any misconduct or lack of good faith on defendant's part.

■ Complaint is made because the court refused to grant plaintiff's motion for leave to take additional evidence. There is some claim made that plaintiff and his counsel thought the case was only to be partly tried when it was in fact tried in June, 1937, almost two and one-half years after the case was at issue. During the intervening time plaintiff and his expert accountants had been afforded free access to defendant's books and records and had availed themselves thereof. The affidavits upon which the motion rests do not show wherein there was error on the part of the court in arriving at the conclusion reached. At most they are but glittering

generalities of what plaintiff thinks rather than what he is capable of furnishing in the way of additional proof. Furthermore, when the trial was over both parties agreed "that the accountant Miller [plaintiff's expert] should have 30 days to coördinate figures; 15 days after that for the defendant to answer, and if a reply, five days to take care of any reply." No such summary or coördination of figures was ever supplied. Although additional time was granted, nothing came of it. Eighty-four days elapsed between time of trial and the making of the findings. Upon the hearing of plaintiff's alternative motion for this and other relief the court, in its memorandum denying the same, states that it "informed plaintiff's coünsel that he might then submit his accountant's report, but counsel ignored the offer."

The judgment is affirmed.

[1]Reported in 283 N. W. 750.