ARTHUR E. REHNBERG v. MINNESOTA HOMES, INC., AND ANOTHER.[1]

March 21, 1952.

No. 35,605.

[1]Reported in 52 N. W. (2d) 454.

See, Rehnberg v. Minnesota Homes, Inc. 235 Minn. 558, 49 N. W. (2d) 196.

*Alfred R. Sundberg,* for appellant.

*D. D. Daly,* for respondent.

MATSON, JUSTICE.

Plaintiff appeals from an order granting a motion to cancel, and to expunge from the record of the register of deeds for Dakota county, a notice of *lis pendens.*

Plaintiff's complaint alleges that he discovered a tract of land and conceived the idea of subdividing it and erecting homes thereon for sale to the public. He interested defendant Gilbert C. Hamm and other persons in the project, and as a result of his activities defendant corporation, Minnesota Homes, Inc., was formed. After the corporation was organized, it entered into a contract (as expressed by corporate resolution) with plaintiff and Hamm pursuant to which:

(a) The corporation took title to the land and confirmed and ratified plaintiff's activities in platting the same as A. E. Rehnberg Southview Addition to West St. Paul.

(b) The corporation *employed* Hamm to construct houses for a building fee of $500 per house plus 25 percent of the net profit to the corporation from the sale of said houses.

(c) The corporation *employed* plaintiff to sell said houses for a fee of $150 per house plus 25 percent of the net profit to the corporation from the sale of said houses.

(d) Neither Hamm nor plaintiff was to be entitled to payment of the 25 percent share in the net profits until. the net profits from all sales had been determined.

Thereafter, *pursuant to said contract,* plaintiff completed all work necessary to effect the platting of the property and secured the necessary approvals of the federal government and its respective agencies, as well as the approval of G. I. loans, and completed negotiations with a bank for the financing of the undertaking.

Pursuant thereto, the first 26 homes were completed and sold. Plaintiff, however, received no part of the money due him under the contract. Hamm has now acquired sole ownership of *all* stock of the corporation, and the latter claims that it is now insolvent. Further, plaintiff has been notified by Hamm and the corporation that they no longer intend to carry out the terms of the contract with plaintiff. In fact, the corporation and Hamm are now in the process of constructing 46 additional homes, and these homes have been listed with another agent for sale. Plaintiff further alleges that, although Hamm agreed to construct the houses for a fixed amount, he has in fact charged more than that amount, so that a profit by the corporation is impossible. Both Hamm and the corporation have refused to make a correct accounting of construction costs and business operations.

Plaintiff prays for judgment that both defendants be required to give an account of the operations, that he be given judgments for the amounts due him under the contract, and that the same shall constitute specific liens against each of the properties.

In connection with his action, plaintiff filed in the office of the register of deeds a notice of *lis pendens* on the property covered by the contract. The corporation thereafter moved the court for an order cancelling, and expunging from the record, said notice of *lis pendens*. This appeal is from the order granting this motion.[2]

M. S. A. 557.02 provides:

"In all actions in which the *title to,* or any *interest in or lien upon,* real property is involved or affected, or is brought in question by either party, any party thereto, * * * may file for record * * * a notice of the pendency of the action, * * *." (Italics supplied.)

■ Pursuant to the above section, a notice of *lis pendens* may be properly filed only if plaintiff pleads a cause of action which in-

---

[2]An order cancelling a notice of *lis pendens* is appealable. Rehnberg v. Minnesota Homes, Inc. 235 Minn. 558, 49 N. W. (2d) 196.

volves or affects the title to, or any interest in or a lien upon, specifically described real property.[3]

■ No issue arises as to the title. Plaintiff admits that the title to the real estate, and any and all interest therein, is owned by the corporation. The filing of the notice of *lis pendens* can be justified, if at all, only on the theory of an equitable lien. No equitable lien by express contract arises, in that the complaint does not allege that the corporation agreed to give plaintiff a lien on the premises as security for payment of his services. Plaintiff simply alleges a breach of contract, prays for an accounting, and demands that any amount adjudged to be due him shall, to enforce its collection, be declared a specific lien upon the property. The lien which results merely from an ultimate entry of a judgment provides no basis for the filing of a notice of *lis pendens*. Plaintiff contends, however, that the agreement established by the allegations of his complaint is that of a joint adventure for the mutual benefit of the contracting parties, and that the legal title to the premises is therefore held by the corporation in trust for the benefit of the joint adventurers, inclusive of himself. It is for the enforcement of this alleged trust that he claims to have an equitable lien which brings him within the *lis pendens* statute. If plaintiff is correct in his theory that he has in fact pleaded a joint adventure, then his action involves an equitable lien upon the designated real estate, and he has brought himself within the provisions of § 557.02 for the proper filing of a notice of *lis pendens*.[4]

■ We come to the basic issue of whether we have a joint adventure. Generally speaking, a joint adventure is created—assuming that a corporation has not been organized and the circumstances do not establish a technical partnership—where two or more persons combine their money, property, time, or skill in a particular business enterprise and agree to share jointly, or in proportion to their respective contributions, in the resulting profits and usually in the

---

[3]See, Joslyn v. Schwend, 89 Minn. 71, 93 N. W. 705; 34 Am. Jur., Lis Pendens, § 22.

[4]Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108.

losses.[5]  In a qualified sense, a joint adventure is a limited partnership, *not limited in a statutory sense as to liability but as to scope and duration.*[6]

██  Although a joint adventure is not, in a strict legal sense, a copartnership, the rules and principles applicable to a partnership relation, with few if any material exceptions, govern and control the rights, duties, and obligations of the parties.[7]  No definite rule has been formulated for identifying the joint adventure relationship in all cases.  Each case depends on its own peculiar facts.  It is recognized, however, that an enterprise does not constitute a joint adventure unless each of the following four elements are present, namely:

(a)  *Contribution*—the parties must combine their money, property, time, or skill in some common undertaking, but the contribution of each need not be equal or of the same nature.[8]

(b)  *Joint proprietorship and control*—there must be a proprietary interest and right of mutual control over the subject matter of the property engaged therein.[9]

(c)  *Sharing of profits but not necessarily of losses*—there must be an express or implied agreement for the sharing of profits[10]

[5]See, Bond v. O'Donnell, 205 Iowa 902, 218 N. W. 898, 63 A. L. R. 901; Chisholm v. Gilmer (4 Cir.) 81 F. (2d) 120; Brooks v. Brooks, 357 Mo. 343, 208 S. W. (2d) 279, 4 A. L. R. (2d) 826; 30 Am. Jur., Joint Adventures, § 7; Annotations, 48 A. L. R. 1055, 63 A. L. R. 909.

[6]Jones v. Walker, 51 Misc. 624, 101 N. Y. S. 22; Bond v. O'Donnell, *supra.*

[7]Church v. Odell, 100 Minn. 98, 110 N. W. 346; see, Lipinski v. Lipinski, 227 Minn. 511, 35 N. W. (2d) 708; Keiswetter v. Rubenstein, 235 Mich. 36, 209 N. W. 154, 48 A. L. R. 1049; 15 Minn. L. Rev. 644; 30 Am. Jur., Joint Adventures, § 5.

[8]Simpson v. Richmond Worsted Spinning Co. 128 Me. 22, 145 A. 250; Annotation, 63 A. L. R. 910; Keiswetter v. Rubenstein, 235 Mich. 36, 209 N. W. 154, *supra;* see, McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760; Annotation, 48 A. L. R. 1059.

[9]See, McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760; 30 Am. Jur., Joint Adventures, § 11.

[10]Houston v. Dexter & Carpenter, Inc. (D. C.) 300 F. 354; Columbian Laundry v. Hencken, 203 App. Div. 140, 196 N. Y. S. 523; see, Annotations, 48 A. L. R. 1058, 63 A. L. R. 909; 30 Am. Jur., Joint Adventures, § 12.

*(aside from profits received in payment of wages as an employe)* but not necessarily of the losses.[11]

(d) *Contract*—there must be a contract, whether express or implied, showing that a joint adventure was in fact entered into.[12]

The first element of *contribution* is here present, in that plaintiff contributed his time, knowledge, and skill to the undertaking in discovering and promoting the enterprise, as well as in the subsequent sale of the houses. The essential element of *joint proprietorship and control* is, however, lacking. There is no showing that plaintiff had any control over the manner in which the enterprise was carried on or that he even had any voice in the management of the corporation. In fact, the contract by its express terms identifies plaintiff's status as simply that of an employe.

Likewise, the third element of *sharing in the profits* in a manner *consistent with a status of a joint adventure* is absent. It is true, plaintiff was to share in the profits, *but only for the specific purpose of compensating him as an employe.* In the analogous situation of a partnership, § 323.06(4)(b) provides that the receipt by a person of a share in the profits is prima facie evidence that he is a partner, *but that no inference shall be drawn if such profits are received in payment as wages of an employe.* Furthermore, the indispensable element of a *contract* for the formation of a joint adventure is also absent. We have a contract, but it is one that expressly creates an employment relation and thereby negatives any intent to create a joint adventure. There is no merit in plaintiff's contention that the corporation by its organization thereby became a partner or a member of a joint enterprise. The fallacy of

[11]Kitzman v. Postier & Kruger Co. Inc. 204 Minn. 343, 283 N. W. 542; Keiswetter v. Rubenstein, 235 Mich. 36, 209 N. W. 154, *supra;* Simpson v. Richmond Worsted Spinning Co. 128 Me. 22, 145 A. 250, *supra;* see, Orvis v. Curtiss, 157 N. Y. 657, 52 N. E. 690, 68 A. S. R. 810.

[12]Arnold v. De Booy, 161 Minn. 255, 201 N. W. 437, 39 A. L. R. 403; Brown v. Wood, 293 Mich. 148, 291 N. W. 255, 127 A. L. R. 1436; Finn v. Drtina, 30 Wash. (2d) 814, 194 P. (2d) 347, 2 A. L. R. (2d) 919; 30 Am. Jur., Joint Adventures, § 9.

this latter theory was answered by this court in Wilson v. Maryland, 152 Minn. 506, 511, 189 N. W. 437, 439, when we said:

"* * * The [trial] court speaks of the transaction as involving an agreement to acquire these properties and 'operate them together through a corporation.' But this means nothing more or less than that the parties agreed to form a corporation which should carry on this business."

It follows that a joint adventure is not established by the pleadings, and the order of the trial court must be affirmed.

Affirmed.

