Ann **CURRY** as surviving wife of Christopher Curry, deceased; et al., Respondents,

v.

Brian **McINTOSH**, individually, d.b.a. Sickle Lake Lodge, Ltd., Respondent,

**Parsons Airways Northern, Ltd., Appellant,**

and

Paul **VAN STONE, Respondent,**

v.

Brian **McINTOSH**, individually, d.b.a. Sickle Lake Lodge, Ltd., Respondent,

**Parsons Airways Northern, Ltd., Appellant.**

No. C9–85–2123.

Court of Appeals of Minnesota.

June 10, 1986.

Review Denied Aug. 20, 1986.

James L. Fetterly, Cooper S. Ashley, Fetterly & Purdy, P.A., Minneapolis, for Ann Curry and Paul Van Stone, Respondents.

Elizabeth Hoene, Donald W. Niles, Doherty, Rumble & Butler, St. Paul, for Brian McIntosh.

Richard A. Bowman, Robert K. Miller, Mickey W. Greene, Bowman & Brooke, Minneapolis, for Parsons Airways Northern, Ltd.

Heard, considered and decided by LANSING, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

LANSING, Judge.

Parsons Airways, a Canadian corporation, appeals the trial court's ruling that its contacts with the state are sufficient to permit Minnesota courts to constitutionally exercise jurisdiction over it. We reverse.

## FACTS

These consolidated cases arise out of a seaplane accident that occurred in June 1984 on Lac Brochet in northern Manitoba, Canada. A group of Minnesotans had purchased a package fly-in fishing trip from Brian McIntosh, operator of the Sickle Lake Lodge in the Manitoba wilderness. McIntosh contracted with Parsons Airways Northern, Ltd., to provide seaplane transportation from Lac Brochet to an outpost on Jackfish Lake. The plane crashed dur-

ing an attempted take-off. Christopher Curry drowned, and Paul Van Stone was injured.

Plaintiffs brought wrongful death and personal injury actions against McIntosh and Parsons Airways in Hennepin County District Court. The complaints name as defendants:

> Brian McIntosh individually, d/b/a Sickle Lake Lodge, Ltd., *and as agent for* Parsons Airways, a Canadian corporation, and Parsons Airways, a Canadian corporation.

(Emphasis added). The complaint alleges that McIntosh and Parsons Airways were engaged in a joint venture, and, alternatively, that each of the defendants was the "agent, employee or servant of the other."[1] McIntosh asserted a cross-claim against Parsons for contribution, indemnity, and breach of contract. Parsons Airways moved to dismiss the action on grounds that the court lacked personal jurisdiction and service of process was insufficient.

The affidavits and interrogatories in the record provide the following jurisdictional facts:

McIntosh has appeared at sports and fishing shows in the Twin Cities area a number of times to promote his lodge. Members of the fishing club to which Curry and Van Stone belonged met McIntosh at a fishing show in Minneapolis in 1981. Club members booked trips for the years 1981–84. In 1984 they paid their deposit to McIntosh at the fishing show in Minneapolis and were to pay the balance at the time of the trip.

McIntosh listed the name and address of Parsons Airways on Sickle Lake Lodge advertising brochures distributed at fishing shows. A brochure distributed in 1984 said McIntosh would meet customers and would "then provide transportation to Parsons

Airways where a chartered plane" awaited the customer.

Parsons Airways is based in the city of Flin Flon, Manitoba. It has never flown into or conducted business in the United States. Parsons has never initiated any contacts with Minnesota residents, although it has responded to inquiries made by Minnesota residents. The company provides charter service for 27 different tourist lodge operations and numerous exploration companies, all of which are located in Canada.

McIntosh alleges the base manager for Parsons Airways at Lynn Lake gave him permission to use Parsons' address and telephone number on his brochures. He further alleges he had a "very close working relationship" with Parsons Airways and the two operations referred customers exclusively to each other. R.C. Ferguson, the president and chief executive officer of Parsons Airways, said Parsons Airways officials did not receive any request from, or grant permission to, McIntosh to use its name and address in the brochures. He denied the existence of any contract with McIntosh other than to provide charter service on an ad hoc basis. He stated that Parsons maintains an arms-length business relationship with McIntosh, as it does with all of its other customers. It had no direct contacts with McIntosh's customers other than through contracts with McIntosh.

Ferguson denied that the company had an exclusive referral arrangement with McIntosh. He admitted giving customers brochures for "any number of its fishing camp or lodge operator customers," including Sickle Lake Lodge, but said the practice had been discontinued out of fairness to all of its customers. He said further that many of Parsons' customers have no telephone or mail service, and Parsons permits them to use its offices for receipt of telephone messages and mail.

---

**1.** McIntosh was personally served with a summons and complaint at his winter home in Tennessee on February 11, 1985. Plaintiffs also claim to have effected service on Parsons Airways by serving McIntosh, at the same time, with a summons and complaint "as agent for Parsons Airways." The plaintiffs made no attempt to serve Parsons Airways in Manitoba. Parsons Airways did not learn of the action until counsel for McIntosh forwarded the complaint by mail.

The trial court denied Parsons Airways' motion to dismiss. The trial court imputed McIntosh's contacts in soliciting Minnesota residents to Parsons Airways, and found those contacts sufficient to assert personal jurisdiction over Parsons. In the alternative, the court found sufficient contacts under a "stream of commerce" theory of jurisdiction. The court also concluded that "service of process upon defendant Parsons Airways through its agent Brian McIntosh was sufficient" under Minn.R. Civ.P. 4.03(c). Despite this finding, the court ordered the plaintiffs to personally serve Parsons Airways in Canada. Parsons was served on February 27, 1986.

## ISSUE

Does Minnesota's long arm statute confer personal jurisdiction, and does Parsons Airways have sufficient contacts with Minnesota to permit constitutional exercise of personal jurisdiction?

## ANALYSIS

The proper exercise of in personam jurisdiction over a nonresident defendant requires: (a) compliance with appropriate state legislation enacted to provide the court with jurisdiction, and (b) the exercise of jurisdiction under circumstances which do not offend the due process clause of the United States Constitution. *David M. Rice, Inc., v. Intrex, Inc.,* 257 N.W.2d 370, 372 (Minn.1977).

### Long Arm Statute

At the trial level plaintiffs argued the following section of the Minnesota long arm statute provides personal jurisdiction over Parsons Airways:

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or

(3) the cause of action lies in defamation or privacy.

Minn. Stat. § 543.19, subd. 1(d). The second exception has been interpreted as representing a codification of the minimum contacts test first articulated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *See Vikse v. Flaby,* 316 N.W.2d 276, 282 (Minn. 1982).

■ In this case the act complained of—negligence in the take-off and failure to provide safety equipment—occurred outside Minnesota, as did the injuries sustained by Currie and Van Stone. Subdivision 1(d) does not provide jurisdiction over Parsons Airways because these injuries did not occur in Minnesota. *See Larson v. Association of Apartment Owners of Lahaina Shores,* 606 F.Supp. 579, 583 (D.Minn.1985) (subdivision 1(d) does not provide jurisdiction over suit brought in Minnesota, by a resident injured in Hawaii, because the injury did not occur in Minnesota); *Anderson v. Matson Navigation Co.,* 336 F.Supp. 1388, 1391 (D.Minn.1971) ("the alleged tort was on the high seas and the fact that plaintiff subsequently returned to Minnesota and here is suffering is not 'injury * * * in Minnesota'" within the meaning of the long arm statute). *See also Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1871 n. 5, 80 L.Ed.2d 404 (1984) (in a wrongful death action brought in Texas after four United States citizens were killed in Peru, "[t]he harm suffered by [plaintiffs] did not occur in Texas").

■ After oral argument, plaintiffs submitted a supplemental brief contending alternatively that McIntosh and Parsons Airways had transacted business within the state, so that jurisdiction is provided by § 543.19, subd. 1(b). Even assuming that McIntosh's contacts could be imputed to Parsons Airways, the record is insufficient to establish either the necessary quantity or quality of McIntosh's business transactions in the state, *see Dent-Air, Inc. v.*

*Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn.1983), or a nexus between those transactions and the plaintiffs' cause of action, *see id.* ; § 543.19, subd. 3.

### Minimum Contacts

Even if jurisdiction were provided by the long arm statute, we could not hold that Parsons Airways' contacts with Minnesota are sufficient to permit suit here.

The constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person. *Id.* (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 416, 104 S.Ct. at 1873). The issue in this case is whether Parsons Airways purposefully established contacts in Minnesota by itself or through McIntosh. The burden is on the plaintiff to prove the minimum contacts necessary to satisfy due process. At the pretrial stage, only a prima facie showing of Minnesota-related activities is necessary. *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 296, 240 N.W.2d 814, 818 (1976).

The complaint alleges that Parsons and McIntosh were either participating in a joint venture or were agents of each other. If true, Parsons' actions might be sufficiently purposeful to satisfy due process.[2] However, plaintiffs have made no showing that Parsons or McIntosh had the ability to control the actions of the other,[3] a finding necessary to prove both a joint venture and an agency relationship. *See, e.g., Rehnberg v. Minnesota Homes, Inc.,* 236 Minn. 230, 235–36, 52 N.W.2d 454, 457 (1952) (right of mutual control is an element of a joint venture); *Jurek v. Thompson,* 308 Minn. 191, 198–99, 241 N.W.2d 788, 791 (1976) (principal's right to control the agent is a critical element of agency). Absent a joint venture or agency relationship, the most that can be said is that Parsons passively allowed McIntosh to promote its services. There is no basis for imputing McIntosh's contacts with Minnesota to Parsons Airways. Parsons' own contacts with the state are plainly insufficient to support jurisdiction.

Because we hold Parsons' contacts with the state are insufficient to permit Minnesota courts to exercise jurisdiction, there is no need to address the sufficiency of plaintiffs' attempted service of process through McIntosh.

### DECISION

Neither the Minnesota long arm statute nor the United States Constitution permit Minnesota courts to exercise personal jurisdiction over Parsons Airways.

Reversed with directions to dismiss the complaint against Parsons Airways Northern, Ltd.

---

**2.** The United States Supreme Court has noted that when commercial activities are carried on "in behalf of" an out-of-state party, those activities may be ascribed to the party where he is a primary participant in the enterprise and has acted purposefully in directing those activities. *See Burger King Corp.,* 105 S.Ct. at 2186 n. 22.

**3.** McIntosh, who joined with plaintiffs in arguing that Parsons Airways is subject to suit in Minnesota, stated in his answer that plaintiffs' damages were caused by the negligence of Parsons Airways, "over whom defendant McIntosh exercised neither authority nor control and for whose actions defendant McIntosh is not responsible."