## L. W. WILSON v. JACOB V. MARYLAND.[1]

July 14, 1922.

No. 22,804.

**Action for accounting will not lie between parties to unexecuted agreement.**
> Plaintiff and defendant entered into an agreement to form a corporation for the operation of a bus line. Defendant had a bus line and it was expected plaintiff would purchase one or more. Each agreed to purchase stock in the corporation and had the option of paying for it in property. Defendant refused to carry out the contract. Each thereafter used and disposed of his own property as he saw fit. An action for an accounting will not lie.

Action in the district court for St. Louis county for an accounting. The case was tried before Freeman, J., who at the close of the testimony denied defendant's motion to dismiss the action, made amended findings and ordered judgment in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Lewis W. Wilson*, pro se.

*O. J. Larson* and *George B. Sjoselius*, for respondent.

HALLAM, J.

Plaintiff is seeking an accounting on an alleged joint adventure. The court found for defendant. From an order denying a motion for a new trial plaintiff appealed.

[1]Reported in 189 N. W. 437.

The facts are not much in dispute. We take them from the findings of the court, and, insofar as it may be necessary to refer to the testimony of witnesses, we take for the most part the testimony of plaintiff since, from his familiarity with their legal bearing, we find his statements more clear and pointed. The essential facts are as follows:

In the early fall of 1917, there were three bus lines operating between "Range" towns from Virginia to Mesaba, one operated by defendant, one by Tony Markovitch and wife, and one by the Korhonen Automobile & Garage Company, a corporation. Only the last made the whole distance. In September, 1917, plaintiff and defendant commenced negotiations looking toward the purchase of the Korhonen and Markovitch lines and the consolidation of them with defendant's line. After conference between plaintiff and defendant, plaintiff opened negotiations with the Korhonen Company for the purchase of its property and good will, but could not get a price satisfactory to defendant. While the negotiations were still going on and on October 3 plaintiff concluded he wanted some kind of an agreement so defendant could not change his mind and plaintiff and defendant entered into a contract as follows:

"Whereas L. W. Wilson of Virginia, Minn., and J. V. Maryland, of Gilbert, are desirous of buying, organizing & operating a Bus and transportation line from old Missabe to Virginia  *  *  *  and that certain others known as the Korhonen Bus & Garage Co., operate a line which said Wilson & Maryland wish to purchase to unite with Maryland's Bus Line & the Korhonen corporation.

"Now, therefore, be it agreed and understood  *  *  *  that Maryland will sell to the new Bus line organized or operated by Wilson & Maryland under what name or manner it may be operated, his  *  *  *  busses with all the tools, equipment, and rights for the sum of $6,500.  *  *  *  Maryland to take shares of stock in Korhonen Transportation line for the amount of the price $6,500.

"Wilson agrees  *  *  *  that if he purchases or acquires the Kor. Transportation line  *  *  *  to take $7,000 worth of stock in the Korhonen Corp. for the same and consisting of shares for that amount."

In explanation of the somewhat obscure language it is to be said that at this time the parties had in mind "buying the Korhonen Company as a going concern," the idea being to "take their stock and everything," conduct the business, if they got together, "under that charter" and change the name of the corporation. In other words, this was a mutual agreement to take, under certain conditions, stock in a corporation already formed.

Plaintiff then proceeded to a conference with the Korhonen Company. The negotiations came to naught and that night part of the Korhonen busses were burned. Immediately defendant covered with his busses the whole route theretofore covered by the Korhonen Company and requested plaintiff to renew negotiations for the purchase of the busses not burned together with the good will of the Korhonen business. Plaintiff obtained a price which was satisfactory to defendant and secured an option at that price. Plaintiff and defendant then, on October 8, entered into a second contract as follows:

"Whereas the parties hereto desire to form a corporation for the purpose of operating a bus and transportation line between the village of Mesaba and the city of Virginia, * * * And whereas it is desirable that such corporation become the owner of certain bus and transportation lines now operating between and through said villages and cities;

"Now, therefore, it is hereby mutually agreed * * * that the said L. W. Wilson will negotiate for the purchase of two certain auto-busses, and other personal property used in the operation of a bus and transportation line between and through the said villages and cities, belonging to the Korhonen Automobile and Garage Company, a corporation, and also for the purchase of the good will of the business of said corporation between and through said villages and cities.

"That if the said L. W. Wilson shall be able to purchase the said personal property and good-will in said business of said corporation at a price satisfactory to the said L. W. Wilson, then the said J. V. Maryland, in consideration of said act of purchase by the said L. W. Wilson, hereby agrees to become, in conjunction with the said L. W.

Wilson, one of the incorporators of a corporation hereafter to be organized for the purpose of operating a bus and transportation line through said villages and cities, and to purchase shares of stock in said corporation to the extent and value of $6,500, neither more nor less; and, in consideration of the execution of this agreement by the said J. V. Maryland, the said L. W. Wilson also hereby agrees to become one of the incorporators of, and to purchase shares of stock in said corporation, to the extent and value of $6,500, neither more nor less.

"And it is further expressly understood and agreed by and between the parties hereto that either of the parties hereto may pay for his shares of stock in said corporation, either in whole or in part, in * * * auto busses or other personal property needful in the operation of said bus and transportation line, then owned by either, the value * * * to be agreed upon by the parties hereto, and in case of a failure of the parties hereto to agree * * * the value of said article to be determined by a board of three appraisers."

It was the intention of the parties that this contract "should supersede" the contract of October 1. It will be observed that this contract provides for the formation of a new corporation. The idea of buying the stock of the Korhonen Company and continuing under its "franchise" had been abandoned because of the fear that there might be a legacy of unpaid obligations of that corporation which would cause trouble. This was then a mutual agreement, under certain conditions, to form a corporation and to each take a block of stock in it, with the option of paying for the stock in property.

On execution of the agreement of October 8 plaintiff purchased the property and good will of the Korhonen Company and very soon purchased the Markovitch line. Soon thereafter plaintiff presented to defendant an elaborate draft of a trust agreement which he had prepared to be used in lieu of articles of incorporation. This suggested agreement was apparently tentative, but in it was embodied a plan of organization by which plaintiff and his wife on one hand and defendant and his wife on the other were to have an equal number of shares, but plaintiff's brother was also included with "just one share, just $10," which one $10 share gave the Wilson family

control of the organization. Defendant saw the point and became incensed at what he called an attempt to "put one over" on him and refused to proceed further with their contract on any terms. No corporation was formed and there was no joint operation of any of the lines except to an extent that was negligible. No joint operation seems to have been contemplated by these contracts other than as stockholders in the corporation. Defendant continued to operate his bus lines and soon purchased new busses. Plaintiff for a time operated some of the busses purchased by him, then after three months sold them out to a third party. The court makes no finding as to whether defendant was justified in his refusal to proceed, but for purposes of this action this is not important.

From this statement of facts it is apparent that there is no basis for a cause of action for an accounting. The trial court was right in reaching this result, though perhaps the chain of reasoning by which he reached the result was defective. The court found as a conclusion of law, that the agreement between the parties was "in the nature of a joint adventure but the joint adventure was never carried out." The court may well be excused for taking this view of the transaction, for both parties in their pleadings used the term "joint enterprise," plaintiff alleging that the parties entered upon a "joint enterprise" and defendant that they manifested a desire to do so, but that no "joint enterprise" was ever formed. Defendant has abandoned the "joint enterprise" idea on this appeal.

Just how the idea developed that there was here any of the elements of a "joint enterprise" or "joint adventure" is not quite clear. There was no joint adventure as that term is used. Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689; Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476; Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570. To constitute a joint adventure two parties must combine their property, money, efforts, skill or knowledge in some common undertaking. These parties owned nothing in common and transacted no business in common, assumed no obligations to do so. The first contract contemplated the taking over of an existing corporation and the transaction of the transportation business by the corporation, defendant agreeing under conditions to

take some of the stock and to pay for it in property and plaintiff agreeing on condition to do the same. The second contract which superseded the first was an agreement to form a new corporation in the event plaintiff bought the Korhonen property, both parties agreeing to take stock with the option to pay for it in property. The court speaks of the transaction as involving an agreement to acquire these properties and "operate them together through a corporation." But this means nothing more or less than that the parties agreed to form a corporation which should carry on this business. Stockholders do not in any proper or legal sense transact the corporate business through the corporation. The corporation is a legal entity, which, as such, transacts its corporate business.

But this analysis of the nature of the agreement is not of vital importance. It matters little by what name we call the relation. Whatever the name or nature of their negotiation, it never passed beyond the executory stage. Plaintiff claimed on the trial that his rights are "one-half interest from October 3, 1917, to this minute in the property that Mr. Maryland had at that time and in new property acquired for the entrprise." We find no justification for this claim. The rights of the parties are much the same as in case of breach of an executory agreement to form a partnership. See Church v. Odell, 100 Minn. 98, 110 N. W. 346; Irvine v. Campbell, 121 Minn. 192, 141 N. W. 108, Ann. Cas. 1914C, 689. There is an action for damages, and, in some cases, if the party moves seasonably, for specific performance, but in no case do the parties become co-owners of property agreed to be but not contributed. The remedy for breach of such a contract is not an accounting of profits made by the offending party in his private use of the property which he has failed to contribute. 30 Cyc. 359, 360; Dow v. State Bank of Sleepy Eye, 88 Minn. 355, 93 N. W. 121; Taylor v. Bradley, 4 Abb. Dec. (N. Y.) 363; Waring v. Cram, 1 Parsons, Sel. Eq. Cas. (Pa.) 516.

At this late day at least specific performance will not lie. If plaintiff has any remedy it is in damages for breach of contract.

Order affirmed.