F. W. Jessop, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 24685.   Promulgated February 28, 1951.

*E. D. McCurdy, Esq.*, for the petitioner.
*A. J. Friedman, Esq.*, for the respondent.

492

OPINION.

TIETJENS, *Judge:* The two assignments of error raise a similar question as to the character of income received and will be discussed together. Petitioner has conceded that of the $17,549.42 and $13,500 payments received in 1947, the amounts of $12,000 and $9,000, respectively, are properly allocable to compensation for personal services and as such taxable as ordinary income. This leaves for decision herein the question of whether the remaining amounts, namely, $5,549.42 received under the employment contract and actually attributable to a percentage on magnet sales during 1947, and $4,500 received under the release agreement and alleged to be attributable to a percentage on prospective magnet sales, constituted compensation taxable as ordinary income or constituted long term capital gains realized on a sale of capital assets consisting of shares of Ohio Electric stock.

Petitioner contends that the Ohio Electric stock at the time of petitioner's sale thereof had a market value greatly in excess of the cash consideration of $10 per share; that under the terms of the option agreement the 5-year employment contract, providing for a stated salary and in addition for a percentage of magnet sales by Ohio Electric, constituted an integral part of the consideration and sale price of petitioner's stock; that the amounts of the payments under the 5-year contract were not ascertainable until received and therefore the contract had no fair market value at the time of the sale, and, further, that the payment to petitioner of a salary for services under one provision of the employment contract does not preclude the percentage payments, on magnet sales under another provision of that contract, from being treated as amounts realized from a sale of prop-

erty (i. e., stock), within section 111, Internal Revenue Code,[1] taxable as capital gains under section 117, Internal Revenue Code.[2]

Briefly stated, respondent contends that the 5-year employment contract provided merely for payments of salary and commission for a period of years as "compensation for personal services," within section 22 (a), Internal Revenue Code and thus the receipt of ordinary income rather than gain from a sale or exchange of property; that the entire amount of $17,549.42 was received during 1947 solely as compensation for services actually rendered, and that the entire amount of $13,500 was received in December 1947 as a single payment for petitioner's relinquishment of a contract right to receive compensation for services over the period of the contract which had not expired at the time of the cancellation.

Petitioner testified that "my idea was that I was selling a company plus extra management, at least during the time until the company could get familiar with the product and the method of sales," but that he did not particularly desire to remain in the employ of the company for 5 years after the sale. Petitioner further testified that the Ohio Electric shares were then selling on the market for about $12.50 per share and he wanted the equivalent of $13 per share for his stock, or approximately $393,000. In effect, petitioner assumes that at time of the sale it could be foreseen that his salary and commissions would average $1,500 per month for the 60-month employment contract period and that petitioner might anticipate receiving $90,000 under that contract in addition to the cash consideration of $303,000 for the stock. As opposed to that assumption petitioner makes the specific contention that the amounts of the payments under the 5-year contract were not ascertainable until received and therefore

---

[1] SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113 (b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. •

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), * * *

 *      *      *      *      *      *      *

(4) LONG-TERM CAPITAL GAIN.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing net income;

 *      *      *      *      *      *      *

(b) PERCENTAGE TAKEN INTO ACCOUNT.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income:

100 per centum if the capital asset has been held for not more than 6 months;
50 per centum if the capital asset has been held for more than 6 months.

the contract had no fair market value to be taken into account in determining gain at the time of the sale of the stock. Also, it would seem that the import of the testimony above referred to is conflicting in that it implies first, that petitioner intended to sell his stock and his management services and second, that he intended to sell the stock for a total price measured by the cash plus anticipated payments under the 5-year contract which would mean that the management services would be rendered gratis. That testimony was designed to explain the petitioner's intention in granting the option agreement.

On the other hand, petitioner also testified that the terms of the option relate the substance of his agreement. In our opinion the terms of the option agreement of February 28, 1946, are clear and unequivocal in providing for two separate undertakings: first, the purchase by M. B. Hott of petitioner's 30,300 shares of stock for $10 per share in cash, and second, the execution by Ohio Electric, a separate party, of employment contracts for the personal services of six persons, three of whom including petitioner, were to receive compensation measured by commissions on sales in addition to stated salaries. The terms of petitioner's employment contract of March 18, 1946, relate only to compensation in salary and commission to be paid by the company and the character of services to be rendered by petitioner in exchange therefor, and specifically state that "This contract is for personal services, and no part of the same is assignable on the part of the Employee." The agreement of release of December 22, 1947, provides for the payment of a lump sum of $13,500 to petitioner in consideration for the termination of petitioner's employment, the full and complete settlement of all obligations under the employment contract, and also the petitioner's agreement to refrain from engaging in the magnet business for a period of 3 years.

The facts herein do not sustain petitioner's contention that the payments received by him from Ohio Electric in 1947 are separable as constituting in part salary for personal services, which petitioner concedes is taxable as ordinary income, and in part a percentage on the company's magnet sales representing deferred payments on his sale price of shares of stock sold to M. B. Hott in 1946. The petitioner's personal services were prerequisite to the obligation of Ohio Electric to pay him compensation consisting of a stated monthly salary plus commissions on sales during the period of his employment. The principles announced in the cases cited and relied on by petitioner are not applicable to the facts herein.[3]

---

[3] Cases relied on by petitioner include:

*Burnet* v. *Logan,* 283 U. S. 404;

*Commissioner* v. *Carter,* 170 Fed. (2d) 911, affirming 9 T. C. 364;

*Westover et al.* v. *Smith,* 173 Fed. (2d) 90;

*George James Nicholson,* 3 T. C. 596, petition for review dismissed October 17, 1945;

*Helvering* v. *Ackerman,* 71 Fed. (2d) 586, affirming 24 B. T. A. 512; and

*Hofferbert* v. *Briggs,* 178 Fed. (2d) 743.

While the employment contract with Ohio Electric was an inducement to petitioner to sell his stock to M. B. Hott, it was not part of the consideration for the sale, but instead was a contract for personal services which had to be rendered as a prerequisite before any payments of either salary or commission became due and payable to petitioner. The form and character of the compensation are immaterial. *Commissioner* v. *Smith*, 324 U. S. 177, rehearing denied and opinion modified, 324 U. S. 695. Since the $5,549.42 commissions on sales of magnets as well as the $12,000 salary received under the employment contract during 1947, constituted financial benefits conferred as "compensation for personal service" within section 22 (a), Internal Revenue Code, the entire amount of $17,549.42 so received was taxable as ordinary income and thus was correctly reported by petitioner on his 1947 return.

The petitioner, in December 1947, offered to sell his employment contract to Ohio Electric for $13,500 which figure was arrived at by petitioner on the basis of $1,000 per month salary and $500 per month commission for a total of 9 months. However the petitioner may have arrived at an amount acceptable to him, the fact is that the agreement of release provided only for a lump sum payment of $13,500 to petitioner in consideration of termination of the employment contract, the settlement of all claims of each party (which so far as we know related only to services rendered or to be rendered), and also petitioner's agreement not to engage in the magnet business for 3 years. We conclude that the cancellation of petitioner's contract right to receive compensation of salary plus commissions over a period of years and his agreement not to engage in the magnet business in consideration for a lump sum payment of $13,500 resulted in his receipt of ordinary income in that entire amount. *George K. Gann*, 41 B. T. A. 388; and *Charles J. Williams*, 5 T. C. 639. See also *Hort* v. *Commissioner*, 313 U. S. 28.

The respondent did not err in his determination.

*Decision will be entered for the respondent.*