Vernon S. TATE, Plaintiff,

v.

Arthur R. KNOX, United States Director
of Internal Revenue for the District
of Minnesota, Defendant.

Civ. No. 2491.

United States District Court
D. Minnesota, Third Division.

May 25, 1955.

David W. Raudenbush (of Morgan,
Headley, Raudenbush & Morgan), St.
Paul, Minn., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Erwin A. Goldstein, Sp. Assts. to Atty. Gen., George E. MacKinnon, U. S. Atty., Alex Dim, Asst. U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff brings this action to recover federal income taxes in the amount of $2,363.03, with interest, paid under protest, for the year 1947. The sole issue is whether a certain payment of money (hereinafter outlined) constitutes payment for the termination of an employment contract, thus subject to taxation as ordinary income, or a capital asset entitled to capital gain or loss treatment upon sale or exchange, under the 1939 Internal Revenue Code.[1]

In the interest of clarity a summary of the pertinent facts may be helpful. For the most part the facts are undisputed. On November 13, 1946, plaintiff and one William E. Atkinson of Fergus Falls, Minnesota, entered into a contract. This contract recited the ownership by Atkinson of certain rendering plants located at Red Lake Falls, Minnesota, Valley City, North Dakota and Twin Valley, Minnesota, and his desire to associate Tate with him in the prosecution of the business conducted at those plants. The parties agreed that Tate should become forthwith the owner of an undivided one-half interest in the assets and business of each plant and pay therefor one-half the agreed value of $190,000 within ten years, one-half of the divisible earnings in the interim to be credited on the purchase price; that each party should immediately lend $5,000 to the business, to be repaid in one year out of earnings; that Tate should assume at once the duties of General Manager of the business conducted at the three plants, at a salary of not less than $350 per month; and that Tate might cancel the contract and be restored to the status quo at the end of one year.

The contract also spoke of the formation of a corporation to take over the assets in exchange for 1900 shares of stock of the par value of $100, one-half of which was to be placed in escrow for Tate; provided that dividends declared upon such stock should be credited upon the purchase price; also it was provided that the $5,000 loan to be made by each party should be made to this corporation. The contract reserved the right to Atkinson to substitute for the contemplated corporation a non-corporate form of enterprise on terms equally favorable to Tate.

The corporation was never formed. In the spring of 1947 Atkinson submitted to Tate a proposed draft of Articles of Partnership, but Tate found them unsatisfactory. Protracted negotiations ensued, culminating in the agreement of May 17, 1947, which provided for the immediate payment by Atkinson to Tate of $21,340.40, of which $1,340.40 represented withdrawals by Tate from a drawing account and $5,000 constituted repayment of the loan (in that amount) he had made pursuant to the 1946 agreement; the conveyance by Tate to Atkinson of all Tate's right, title and interest vested in him by the initial agreement, profits subsequently realized since November 12, 1946, and any assets subsequently acquired by the rendering plants; the dissolution and termination of any partnership or joint adventure which might be deemed in law to have been created by the agreement of November 13, 1946; the mutual release of the parties and a covenant by Tate not to engage in a competing business for a period of ten years within a radius of 100 miles from any of the three rendering plants.

Plaintiff filed his tax return for the calendar year 1947, claiming certain deductions and expenses. For the purpose of simplicity, the final determination of the Commissioner is herein stated. That is that the Commissioner proposed a deficiency in plaintiff's 1947 income tax in the amount of $2,187.56, computed on the theory that the entire amount of the net consideration received

---

1. Internal Revenue Code of 1939, 26 U.S.C., 1952 Ed., § 117.

($15,000 less expenses of $3,010, or $11,990) was taxable as ordinary income under Section 22 of the Internal Revenue Code, 26 U.S.C.A. § 22. Plaintiff acquiesced in this proposal to the extent that it involved charging the expenses of $3,010 against the consideration of $15,000, and on July 30, 1951, paid the resultant increase in tax of $355.75 with interest of $72.03, pursuant to a limited waiver then filed. The remainder of the proposed deficiency in the principal amount of $1,831.81, together with interest in the amount of $531.22, plaintiff paid under protest on January 13, 1953.

■ On February 17, 1953, plaintiff filed a claim for refund for $2,363.03, together with interest from the date of payment. More than six months have elapsed since filing without action on the part of the Commissioner. This Court has jurisdiction.

The record of the case submitted presents two issues: (1) Was there a joint adventure created? (2) Did plaintiff have a *present* interest to sell, as distinct from a right in a purely executory contract?

■ As to the issue of joint adventure, both parties rely principally on Minnesota cases.[2] Obviously both parties cannot be correct. The problem is one of analyzing the agreement in relation to the substantive law of Minnesota.[3]

The defendant contends that except for employment, the contract of November 13, 1946, was incomplete, unexecuted and amounted to nothing more than a negotiation to create something for future operation and effect, which defendant claims does not constitute a joint adventure.[4] The last point of emphasis by the Government is that the final settlement was for the relinquishment of employment, coupled with a covenant not to compete, and the proceeds, therefore, are taxable as ordinary income.[5]

On the other hand, plaintiff forcefully argues that from all the facts, the conclusion is inescapable that at least a temporary joint adventure came into being on November 13, 1946,[6] and that the amount should be treated as a capital gain.

2. Wilson v. Maryland, 152 Minn. 506, 189 N.W. 437, and Rehnberg v. Minnesota Homes, Inc., 236 Minn. 230, 52 N.W.2d 454.

3. Determination of a joint adventure necessitates application of state law. United States v. Ogilvie Hardware Co., 67 S.Ct. 997, 330 U.S. 709, 91 L.Ed. 1192.

4. Wilson v. Maryland, supra.

5. The agreement of May 17, 1947, so provided. Defendant cites: Becken v. Commissioner, 5 T.C. 498; Parker v. Commissioner, 5 T.C. 1355; and Jessop v. Commissioner, 16 T.C. 491, 498.

6. Plaintiff contends this is consistent with the holding of the court in Bradbury v. Commissioner, 23 B.T.A. 1351, 1352.
 Plaintiff relies on the language of paragraph 13 of the agreement of November 13, 1946, which reads as follows:
 "13. It is mutually agreed by and between the parties hereto that party of the first part may at his sole election amend the terms and provisions of the foregoing contract so as to provide generally that party of the second part obtains one-half of the outstanding and issued shares of capital stock of said corporation or an undivided one-half interest in and to all assets hereinbefore described for the consideration hereinbefore expressed and so as to generally carry out the intent and purpose of the foregoing agreement but in such a different manner as will enable party of the first part to legally reduce or avoid income taxes which he may be obligated to pay on the profit which might be realized by him in the sale of said assets if the strict terms of the foregoing agreement are carried out and accomplished. It is acknowledged that party of the first part intends to confer with a tax consultant in order to obtain advice as to the method of selling and transferring his property as hereinbefore described to either party of the second part or to some legal entity, and that such tax consultant might recommend a procedure different than that set forth in the foregoing, whereby party of the first part may be obligated to pay a smaller income tax and still permit party of the second part to acquire an interest in the said assets or in the said proposed corporation upon the same terms and conditions as hereinbefore set forth insofar as he is concerned. When

Whether or not there is a joint adventure is a fact question, and, for practical purposes, the test to be applied is the same as for determining the existence of a partnership.[7]

The elements necessary for a finding of joint adventure are (a) contribution (money, property, time or skill in a common undertaking); (b) joint proprietorship and control (a proprietary interest and right of mutual control); (c) sharing of profits, but not necessarily of losses (aside from profits received in payment of wages as an employee); (d) contract (either express or implied, showing that a joint adventure was in fact entered into).

Admittedly Tate contributed his skill to this enterprise and obviously there was an intent to form some sort of organization defining their respective rights, yet it is nonetheless clear from the record that no such organization ever came into being. In that respect, as defendant contends, the agreement between the parties was purely executory. It must follow, therefore, that no joint adventure was created.[8]

There remains for determination the somewhat vexatious question of whether the final payment was for the termination of an employment contract and for a covenant not to compete as contended by defendant, or whether the covenant not to compete was nonseverable as contended by plaintiff.[9]

Plaintiff Tate testified with respect to the covenant not to compete as follows:

"Q. What was the point of that, if you recall? A. Well, the point was this, that at the time I might have been and since was still interested in getting into the rendering business some place else, and I agreed to that in that I knew all those customers that we dealt with up there quite well; so I agreed that I wouldn't set up a plant within that area or work for any other plant.

"Q. Is there a certain personal relationship involved in this business? A. Yes, there is.

"Q. And the covenant was an incident to the retransfer or resale to Mr. Atkinson then of the business as it had been built up by you, was it? A. That is right."

The foregoing evidence presents a narrow fact question. Despite the testimony of Mr. Tate, it is difficult to unequivocally determine that the covenant was not a separate item actually dealt with.[10]

It is the Court's determination, therefore, that the taxpayer had nothing to convey; that the contract insofar as a joint adventure was concerned was and remained executory; that the covenant not to compete was a separate item of consideration. In so determining the Court is not unmindful of the plaintiff's earnest argument that the $15,000 payment bore the character which the transaction between the parties conferred upon it.

The ruling of the Commissioner is presumptively correct.[11] The plaintiff has failed to sustain the burden of proof.

and if such new proposed plan is suggested by such tax consultant either a new agreement shall be drawn and prepared and executed by the parties hereto or a supplemental agreement shall be so prepared and executed."

7   Hammel v. Feigh, 143 Minn. 115, 123, 173 N.W. 570; Hansen v. Adent, 238 Minn. 540, 545, 57 N.W.2d 681, 684; Rehnberg v. Minnesota Homes, Inc., supra.

8.  This conclusion does not overlook the argument of plaintiff that an interest in a joint adventure is in itself a capital asset, entitled to capital gain or loss treatment. Shapiro v. United States, D.C.Minn., 83 F.Supp. 375, affirmed 8 Cir., 178 F.2d 459.

9.  In this connection defendant relies on Jessop v. Commissioner, 16 T.C. 491, 498, whereas plaintiff says the correct rule is stated in Michaels v. Commissioner, 12 T.C. 17.

10. The Court prefers the rule applied in Jessop v. Commissioner, supra.

11. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

The ruling of the Commissioner is affirmed.

Defendant may submit findings of fact, conclusions of law, order for and form of judgment.

Plaintiff may have an exception.