JUAN SUÁREZ FUENTES ET AL., Plaintiffs and Appellees, v. SOL L. DESCARTES, SECRETARY OF THE TREASURY, Defendant and Appellant. JUAN SUÁREZ FUENTES, Plaintiff, Appellee, and Appellant, v. SOL L. DESCARTES, SECRETARY OF THE TREASURY, Defendant, Appellant, and Appellee.

Nos. 12257, 12258, 12259. Decided May 7, 1962.

374

*Gutiérrez, Saldaña & Sánchez, Sara Torres Peralta,* and *C. Morales, Jr.,* for Juan and José Suárez Fuentes. *J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella* and *J. C. Santiago Matos, Assistant Secretaries of Justice,* for the Secretary of the Treasury.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Rigau.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

We are concerned herein with three considerably inter-related appeals, submitted jointly on the same evidence. In appeal No. 12,257—which corresponds to case No. R-81 of the former Tax Division of the Superior Court of Puerto Rico—appellees Juan and José Suárez Fuentes requested the total reimbursement of the amount declared in the income tax return of 1948, alleging that because of a mistake, besides including their incomes in their individual returns, they also declared them as if there existed between them a special partnership or joint adventure, when at law what existed between them was a landlord and tenant relationship. In appeal No. 12,258—which corresponds to case No. I-359 of the former Tax Division—appellees and appellants Juan and José Suárez Fuentes, after posting a bond challenged certain deficiencies determined by the Secretary of the Treas-

ury on their income tax returns for the years 1946 and 1947, as if there was established between them a special partnership or joint adventure for the exploitation of an apartment building known as *Ocean Walk Apartments* and for the years 1948 and 1949, as if the aforesaid special partnership or joint adventure was established not only as to the aforesaid apartment building, but also as to a farm which José Suárez Fuentes was exploiting, and in the event that the conclusion of the Secretary of the Treasury were correct as to the existence of the special partnership or joint adventure, the Secretary of the Treasury had committed error in determining the incomes and deductions of the aforesaid alleged partnership during the years 1946 and 1947 as to rents, improvements, insurance, interest, water and electricity, depreciation, and taxes during the years 1948 and 1949; in determining the net income, having determined a volume of income by way of rents greater than that reported for the year 1946 by appellees and appellants; in disallowing expenses incurred by plaintiffs and which are deductible under the Income Tax Act of 1946; in notifying an income tax deficiency in 1946 for a determined sum including the penalties of 25% for failing to file the return and of 5% for negligence or intentional ignorance of the Act and regulations approved by the Secretary of the Treasury, since appellees and appellants are not bound to make a return as such a partnership; in adding an incorrect amount by way of rents of the Ocean Walk Apartments building in the notice of deficiency for 1947; in disallowing the deductions for the year 1947 to which appellees and appellants are entitled in excess of those accepted by the Secretary of the Treasury in his notice of February 5, 1953, including deductions not claimed in the return; in notifying income tax deficiencies for the year 1947 for a specific sum including the penalties of 25% and 5%; in including as income of the alleged partnership for the year 1948 the incomes by way of rents of the Ocean Walk Apartments build-

ing and the agricultural incomes of the farm cultivated by the appellee-appellant José Suárez Fuentes; in disallowing as deductions of the gross income for 1948, ordinary and necessary expenses incurred in the exploitation of the farm and in the exploitation of the above-mentioned building; in notifying an income tax deficiency for the year 1948, including interest and penalties and also the penalty of 5%; in including as income for the year 1949 of the aforesaid partnership, the incomes by way of the rents of the building and the produce of the aforesaid farm; in disallowing as deductions from the gross income of 1949 of the alleged partnership, the ordinary and necessary expenses incurred by plaintiffs in the exploitation of the aforesaid business; in notifying an income tax deficiency for the year 1949, including interest and penalties and furthermore the penalty of 5%.

In appeal No. 12,259—which corresponds to case No. I-361 of the former Tax Division of the Superior Court of Puerto Rico—appellee-appellant José Suárez Fuentes, after posting a bond challenged the deficiencies corresponding to the years 1944, 1946, 1947, 1948 and 1949, notified by the Secretary of the Treasury by way of nonidentified and undeclared incomes during the year 1944; in notifying an income tax and interest deficiency imposing a penalty of 25% for not having rendered the corresponding return and furthermore, in imposing a deficiency for fraud equal to 50% of the deficiency of the tax determined; in determining for the year 1947 a deficiency for benefits in a nonexistent partnership, without accepting the permissible deductions, not declared in the return, including a penalty of 5% due to negligence or intentional ignorance; in readjusting the year 1948 by determining nonidentified incomes and a benefit in an alleged partnership, and also in imposing a penalty for negligence or intentional ignorance of the Act and its regulations; in determining for the year 1949 a deficiency charging benefits in an alleged partnership and nonidentified

incomes and imposing a 50% penalty for fraud; in not granting to appellee-appellant for the year 1949 the exemption of $500 to which he is entitled as a veteran and in disallowing deductions not claimed in the return but granted by § 16 of the Income Tax Act.

The essential issue in this appeal is whether or not during the years 1946 to 1949 there existed between the Suárez brothers a special partnership or joint adventure for the exploitation of an urban business, the apartment building known as Ocean Walk Apartments, and an agricultural business, the group of farms known as Herrera. The trial court decided that as to the urban business, the aforesaid partnership or venture did exist but not as to the agricultural business. The Secretary of the Treasury appeals from that part of the judgment which declares such a partnership or venture nonexistent, as to the agricultural business and appellees-appellants Juan and José Suárez Fuentes appeal from that part which declares that such a partnership or venture exists as to the urban business.

It becomes necessary to examine the contractual structures created for the exploitation of both businesses. By deed No. 10 of March 13, 1946 before Notary Víctor A. Coll, Jorge Ortiz Toro and his wife Rita Brunet Calaf, sold to Juan Suárez Fuentes and his wife Aida Miranda and to José Suárez Fuentes, two lots, one consisting of two thousand two hundred seventy and seven hundredths square meters, and the other of nine hundred fourteen and twenty-five hundredths square meters, with their corresponding structures; on the first lot two buildings had been constructed, the main one had seven stories, each one consisting of two apartments, known as Ocean Walk Apartments, and another contiguous building consisting of two stories, the lower one devoted to garages and the upper one to dwellings. On the second lot, a one-story building devoted to garage had been constructed. A mortgage had been constituted on the first lot and its buildings in favor of the Jefferson Standard Life Insurance

Company for the amount of ninety one thousand six hundred twenty dollars. The sale price was of one hundred forty thousand dollars, from which the purchasers reserved the amount of ninety one thousand six hundred twenty dollars to pay the mortgage in time, delivering to the vendors, in the presence of the notary, the amount of forty-eight thousand three hundred eighty dollars.

By deed No. 3 of February 2, 1948, Marcial Suárez and Encarnación Fuentes leased a group of rural properties to Juan Suárez, married to Aida Miranda, for the term of ten years, starting from the date of the execution of the deed up to the same day and month of the year 1958, at the annual rate of twelve thousand dollars, plus the payment of taxes, reducible to eight thousand dollars annually, in case the price of coconuts dropped to less than three dollars per bag, the lessee reserving the right to extend said lease for ten additional years upon three months' notice, and that the leased properties be devoted to the planting and growing of coconut palms, and that the structures or improvements remain in favor of the lessors.

By private deed executed on February 2, 1948 by Marcial Suárez and Encarnación Fuentes as party of the first part and Juan Suárez Fuentes, as the other party, protocolized by deed No. 7 of February 27, 1948 before Notary Víctor A. Coll, and referring to the above-mentioned lease, both parties set forth that "Juan Suárez Fuentes together with his brother José Suárez Fuentes, have the *naked property* of an apartment building located in Terraza del Parque and known as Ocean Walk Apartments"; that "the rents from this building belong to Marcial Suárez and his wife Encarnación Fuentes"; that "there is a mortgage on this building as part of the deferred price"; that "the parties set forth that as consideration of the lease of the above-mentioned properties, it was stipulated and is hereby ratified, that after deducting the administration expenses of the leased farms, all the bene-

fit which they produce will be used and devoted exclusively to be credited to the aforesaid mortgage until it is completely paid off."

By deed No. 4 of February 4, 1948 before Notary Víctor A. Coll, Juan Suárez Fuentes and his wife Aida Miranda, subleased to José Suárez Fuentes and his wife Celia Cestero, the same properties which were leased to the former by Marcial Suárez and his wife Encarnación Fuentes, José Suárez binding himself "to administer the subleased farms with the care of a good father of family, complying with all the terms of the lease between Marcial and Juan Suárez," such administration constituting "the consideration of the sublease," the terms and conditions of the aforesaid administration being the following: "(a) José Suárez will receive and have a right to retain the amount of six thousand dollars annually for the payment and care of his personal expenses; (b) José Suárez will attend to the planting, cultivating and harvesting and sale of the fruits, taking for these purposes whatever measures are necessary; (c) José Suárez is bound to keep the accounts of the administration in adequate accounting books to the satisfaction of Juan Suárez, who may inspect them whenever and as often as he deems it necessary; (d) All the personnel of the farm will be employed by José Suárez, in agreement with Juan Suárez; (e) As to the sale of the fruits, José Suárez will consult Juan Suárez and obtain his consent as to the price and sale conditions; (f) José Suárez binds himself to consult and obtain Juan Suárez' consent as to any administrative act which is not routine in the cultivation of the plantations, and very specially as to the sale price of the products and persons to whom those sales are made; (g) José Suárez shall open a special account in a bank of San Juan, where all the monies produced by the administration shall be deposited and against which he will draw to pay his expenses. The checks shall be signed by José Suárez and countersigned by Juan Suárez; (h) At the end of each

year a balance and liquidation of all the negotiations effected during the year shall be carried out and the benefits obtained shall be equally divided between both parties, subtracting from don José's share the six thousand dollars taken for his personal expenses; (i) If during the effectiveness of this contract, either one of the executing parties should die, the survivor shall continue or assume the administration of the farms, whichever the case may be, and the heirs of the deceased shall receive the share proportional to the benefits while the term of the contract lasts."

By private contract executed before Notary Víctor A. Coll on February 26, 1948, Marcial Suárez and his wife Encarnación Fuentes, as one party, and Juan Suárez and his wife Aida Miranda and José Suárez and his wife Celia Cestero, as the other party, agree and bind themselves to: "FIRST: Marcial Suárez and Encarnación Fuentes and Juan Suárez and Aida Miranda by deed number three executed before Public Notary of this Capital Víctor A. Coll on the second day of February, nineteen hundred and forty-eight, entered into a contract of lease of rural farms, which contract in all its particulars and as to the subsequent effects will be considered as part of this agreement; SECOND: Juan Suárez and his wife Aida Miranda, and José Suárez and his wife Celia Cestero, by deed number four before Notary of this Capital Víctor A. Coll, of February four, nineteen hundred and forty-eight, executed a contract of sublease and administration of various rural farms, which contract in all its particulars and as to the subsequent effects, shall be considered as part of this agreement, as well as the explanatory deed signed before the same Notary, on the same day, bearing number five in his protocol and referring to the previous deed; THIRD: That on the second day of February, nineteen hundred and forty-eight, Marcial Suárez and his wife Encarnación Fuentes, and Juan Suárez, executed a private document, but attested by Notary Víctor A. Coll, on the same

date, which private document, by virtue of the present agreement, has been agreed upon by the parties to have it protocolized, making it a public deed in Mr. Coll's notarial protocol; and all its obligations are made a part of this agreement; FOURTH: That as an addition to the clauses, obligations and agreements recorded in the previous documents, the parties herein make the following additions: 'A'—It is expressly agreed upon that the main dwelling house existing in the farm described under letter 'A' in lease deed number three of the second day of February, nineteen hundred and forty-eight, known by the name of 'Finca Herrera' as well as an extension of two cuerdas of land surrounding it, shall remain in the possession of Marcial Suárez and his wife Encarnación Fuentes, while they are living; but that Juan as well as José, will have the right to dwell in the aforesaid property, alone or with their respective families, under the authority of the spouses Suárez-Fuentes. And it is expressly agreed that the aforesaid immovable shall be exclusively used for these purposes and for none other; it is established herein that the use of the Herrera house referred to in this contract by any of the parties, refers exclusively to its service as a dwelling house and it may not be understood at any time that any of the parties shall have the right to prevent that the offices, garages, and other establishments necessary for the exploitation of the farms, be changed, vacated or in any way prevented from being utilized for these purposes; 'B'— The clause in which the price of the lease of the farms is stipulated by the spouses Suárez-Fuentes and Juan Suárez, shall be twelve thousand dollars annually during the first ten years, and eight thousand dollars in case of an extension; 'C'—All the obligations assumed by Juan Suárez in the lease contract continue to be in effect while the sublease lasts; and the sublease term will be exactly the same as that of the lease; 'D'—Any of either parties in this contract shall have the right to order that this and the other signed private contract

specifying the lease contract be protocolized by a Public Notary of this Capital and reproduced in a public deed; 'E'— In case of cyclones, storms, hurricanes or strong winds, plagues in the palms, or any other analogous disaster, the executing parties shall reach an agreement, by themselves or through their representatives, in order to modify this contract according to the circumstances. It is further expressed that the contracting parties waive the right to which they are entitled, to appeal to the courts; and instead of this right, a third person would be appointed, selected by mutual agreement, whenever a compromise between the interested parties is impossible;

"In case that the above-mentioned disasters occur, the contract shall be modified according to the situation and by agreement of the parties to this contract, reducing the lease rentals in the lease and sublease contracts proportionally to the loss which the production might suffer; 'F'—As to improvements, the lease contract shall be modified in the sense that such improvements, or the value which they may represent, shall be equally divided between the lessee and sublessee."

Upon examining in their entirety the documents which best reflect the judicial business conducted by the parties, in its public aspects as well as in its private or secret aspects, it is clearly seen that the problem before us is not a typical relation of "community of property" nor of a "lease" but of a more complex structure, in which the urban business as well as the agricultural business are intimately interrelated, and in which, each one of the parties involved is in a certain fiduciary relation with the other. We do not have here the total and complete transfer of rights, which could clarify the nature of the businesses and the situation of the parties within the same.

Nevertheless, the question which we must answer is this: Does this relation constitute, in strict tax law, a special

or a typical partnership or joint adventure? The law applicable to the case is § 2(a) (3) of Act No. 74 of August 6, 1925, as amended by Act No. 31 of April 12, 1941—13 L.P.R.A. § 632—which provides: "The term 'partnership' includes civil, business, industrial, agricultural and professional partnerships or of any other kind, whether or not its constitution is set forth by public deed or private document; and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit."

In our case law we have clarified some of the points concerning this issue. In the case of *Puig* v. *Tax Court*, 65 P.R.R. 691, 695 (De Jesús, 1946), it was decided that the mere community of property does not constitute a joint adventure if its juridical transaction is confined to the specific activity of receiving the rents, without contributing the condominia, and engaging in a transaction distinct from the natural transaction of the community; in the case of *Vías* v. *Tax Court*, 67 P.R.R. 459, 462 (Todd, Jr., 1947), it was decided that the property within a community may be transformed, by destroying its former structures and constructing others, without it constituting a joint adventure; in the case of *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 93, 103 (Todd, Jr., 1949), it was decided that if the property owned in common is contributed to a business different from the natural activity of receiving individually the rent in common, the community becomes a joint adventure for profit; in the case of *Calaf* v. *Tax Court*, 73 P.R.R. 758, 763 (Marrero, 1952), it was stated that if the mere existence of a community of property does not constitute a partnership as contemplated by § 2(a) (3), but "if that community is engaged in a joint venture for the mutual benefit of the co-owners, a partnership, as contemplated by the aforesaid Section, is clearly constituted." As may be seen, the cases which up to now have been studied in our jurisdiction, refer specifically to the distinction that should be established be-

tween what constitutes a community of property under our civil law and a special partnership or joint adventure under our tax law.

■■ Since the term "joint adventure" constitutes a modality of the generic concept "partnership," as defined by § 2 (a) (3) of our Income Tax Act of 1925, as amended, perhaps it may be advisable, in cases which do not refer to the community of property, to establish certain additional norms in order to determine the existence of a "joint adventure" when it concerns the use or enjoyment of a thing owned by another, as in the case of the lease. As might be expected, some of the norms accepted by tax laws to determine the establishment of a "joint adventure," are the same which would be employed to discover the existence of a tax "partnership."

Without considering none of the rules formulated herein as essential to the establishment of a partnership, in strict tax law, the following may be considered as indicative of the existence of such a partnership: (1) mutual interest in profits; (2) mutual liability for debts and losses, although an express agreement not to share the loss is not essential to the constitution of the partnership; (3) mutual responsibility in the conduct of the partnership's business, but it is a well-recognized exception that a partnership may exist notwithstanding the delegation to one member of the management of the business in a greater proportion; (4) common contribution to and ownership of partnership property, but this test has slight value, since it is considered that a partnership may be constituted even if only one of the partners is the owner of the property and the firm capital consists merely of the right of the other member to use the property belonging to the former as in the case of industrial partners in Puerto Rico; (5) the rendition of service by all partners, although the possibility of an inactive partner is admitted, as in the case of silent partners in Puerto Rico; (6) that no

prohibition exist to alienate or transfer any property or interest of the partnership, although the inclusion of such a restriction should not be considered as to negate the existence of a partnership.

 The following is considered to be pertinent evidence to the existence of a partnership: how book entries are made, although they may not be considered as conclusive evidence; representation before the public; the statements to government agents of the businesses of the partnership; how purchases are made and the way in which credit has been obtained in the market; who makes the contracts and assumes liabilities; the name in which bank accounts are opened; the name in which court actions or claims are filed with the State's authorities; the existence of partnership contracts. As to this last medium of evidence, although it is stated in the contracts that the parties have not had the intention of constituting a joint adventure or a partnership, if the agreements and motivations of the parties so show it, it will be considered that such joint adventure or partnership was established for the proper tax purposes: 6 MERTENS, The Law of Federal Income Taxation 111 *et seq.*, §§ 35.03 and 35.04.

 In the supplement corresponding to the year 1956 of the above-mentioned work we find the case of *Tate* v. *Knox*, 131 F.Supp. 514, 517 (Donovan, 1955), in which it is decided that a joint adventure exists once the following facts are proved: (a) contribution of money, property, time or skill in a common undertaking; (b) a joint proprietary interest and mutual control of the business; (c) sharing of profits, aside from profits received in payment of wages, but not necessarily of losses; (d) a contract either express or implied showing that a joint adventure was in fact entered into.

 As to the apartment building, it is unquestionable that pursuant to the private contract executed on February

2, 1948 by Marcial Suárez and his wife Encarnación Fuentes, and Juan Suárez Fuentes, accepted by José Suárez Fuentes in the private contract executed by the three of them and their respective wives on February 26, 1948, the total benefits of the agricultural business should be applied to the payment of the mortgage executed on the urban business over which Marcial Suárez and his wife retain a usufruct, there having been established by virtue of the transaction of the two businesses, a certain fiduciary relation among the three parties involved, since those who operate the agricultural business are responsible for the payment of the price of the urban business and of insuring a right of usufruct. This is not a typical creditor-debtor relationship, but an administration of certain properties contributed by a person and operated by two others to obtain a common profit.

 As to the agricultural business there is, besides the documentary evidence already stated, abundant documentary evidence which leaves no room for doubt, that Juan and José Suárez Fuentes made the book entries for the commercial transactions as if it were a joint adventure; that they represented themselves to the public in their letterhead as if they were a single entity, that they reported their profits to the government as a partnership, that they had joint bank accounts, with checks printed with both names, that they communicated with state authorities as if a partnership was established, and pursuant to the terms of the afore-mentioned sublease and administration contract, they jointly drew against their common bank funds and indistinctly conducted negotiations of administration, and they jointly assumed obligations with Puerto Rico Coconut Industries, Inc. The isolated fact that José Suárez Fuentes did not participate in the losses in the operation of the agricultural business does not alter the conclusion that it was a joint adventure, because tax laws as well as civil laws acknowledge the mere

contribution of work or skill as a proprietary interest of a social nature, sufficient to constitute a joint adventure or special partnership.

The judgment will be affirmed as to the part which declares the existence of a joint adventure respecting the immovables comprised by the apartment building, and reversed as to the part which declares the aforesaid joint adventure nonexistent as to the leased property, because this Court holds that said joint adventure is constituted as to both properties.