**Philip Mark BLY, et al., Appellants,**

v.

**Brian W. GENSMER, et al.,
Respondents.**

**No. C4–86–340.**

Court of Appeals of Minnesota.

May 13, 1986.

David K. Hackley, Minneapolis, for appellants.

Robert L. McCollum, Cragg, Bailly, Gordon & McCollum, Ltd., Minneapolis, for respondents.

## OPINION

PARKER, Judge.

This appeal is from an order granting partial summary judgment to respondents Brian Gensmer and Georgianne Gensmer and discharging the notice of lis pendens that had been filed on two pieces of property, lots 1 and 3, by appellants Philip Bly and Brenda Urke. Appellants essentially contend the trial court erred in discharging the notice because their complaint involves an existing lien. We disagree and affirm.

## FACTS

Respondents were owners of Creek Ridge Estate Addition, a piece of land located within the boundaries of the City of Eden Prairie. They planned to subdivide the property into five lots for single-family homes and two outlots. In March 1982 the city council approved the plat contingent upon respondents granting the city a conservation easement covering all of Outlot B, a flood plain through which Purgatory Creek runs. It was agreed that the city would not issue building permits for the lots until the final granting of the easement.

Respondents sold lots 5, 2, and 1 to third parties under contracts for deed. They retained lot 3 as a site for their own home. Respondents claim that all the purchasers were given preliminary plats showing the easement area and were advised of the restrictions on the use of Outlot B.

Appellants entered into a purchase agreement for lot 4 and Outlot B in March 1984. They claim they knew nothing of the proposed easement. Respondents, however, contend that appellants were aware of the restrictions which appeared in the city records, in the abstract of title reviewed by appellants' attorney, and in the subdivision plat.

In early June respondents submitted the proposed conservation easement over Outlot B to the city. The easement, executed on June 25, 1984, provides that Outlot B shall be "preserved predominantly in its natural condition" and that "[n]o building * * * or other man-made structure shall be placed in the conservation area without the prior written consent of city." One day after respondents granted this easement to the city, lot 4 and Outlot B were sold when appellants tendered $16,000 to respondents and a contract for deed was executed.

In April 1985 appellants commenced this action alleging breach of warranty of title, fraud, unjust enrichment, and entitlement to punitive damages. In conjunction with their suit, they filed a notice of lis pendens on lots 1 and 3. Respondents' motion for partial summary judgment was subsequently granted by the trial court, and the notice of lis pendens was discharged. Appeal was timely taken from this order.[1]

## ISSUE

Did the trial court err in cancelling the notice of lis pendens?

## DISCUSSION

■ A notice of lis pendens may properly be filed only if a party pleads a cause of action "in which the title to, or any interest in or lien upon, real property is involved or affected." Minn.Stat. § 557.02 (1984); *Joslyn v. Schwend,* 89 Minn. 71, 93 N.W. 705 (1903). Appellants assert no right in or title to lots 1 and 3. The notice of lis pendens is therefore justified, if at all, solely on the theory of an equitable lien. If the cause of action and notice of lis pendens involves a lien, the lien must exist at the time the action is commenced. *Grace Development Co., Inc. v. Houston,* 306 Minn. 334, 335, 237 N.W.2d 73, 75 (1975).

*Homes, Inc.,* 235 Minn. 558, 49 N.W.2d 196 (1951).

1. An order cancelling a notice of lis pendens is appealable as of right. *Rehnberg v. Minnesota*

Appellants argue that their cause of action involves both an equitable lien and a constructive trust which arose immediately upon respondents' "unjust enrichment of themselves by creation of the servitude against Appellants' Outlot." They contend that by granting the conservation easement to the city, respondents "sacrificed all value of Outlot B" in order "to enhance the value [respondents] received from Lots 1, 2, 3 and 5, which thus became buildable lots rather than mere vacant land."

A constructive trust is not, in itself, construed as a lien on or as affecting title to property; it does not exist so as to affect the property held by the wrongdoer until it is declared by a court as a means of affording relief. *International Refugee Organization v. Maryland Drydock Co.,* 179 F.2d 284, 287 (4th Cir.1950). If appellants' complaint establishes that they are entitled to a constructive trust on the property, legal title would be held in trust for their benefit. An equitable lien would arise for the enforcement of this trust, thus bringing their cause of action within the lis pendens statute. *See Rehnberg v. Minnesota Homes, Inc.,* 236 Minn. 230, 234, 52 N.W.2d 454, 456 (1952) (constructive trust arising out of joint adventure in certain real property was action involving equitable lien and therefore within provisions of § 557.02).

A constructive trust will arise "whenever the legal title to property is obtained through fraud, oppression, duress, undue influence, force, crime, or similar means, or by taking improper advantage of a confidential or fiduciary relationship * * *." *Wright v. Wright,* 311 N.W.2d 484, 485 (Minn.1981) (citations omitted). Such a trust is imposed "to prevent unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose" and arises in favor of the person "equitably entitled to the property." *Id.*

Appellants assert no right to lots 1 and 3 which would give rise to a construc-

tive trust. They seek damages based on the fact that granting the conservation easement made the other lots more valuable as building sites and enabled respondents to sell them. No claim is made that respondents are under a duty to convey lots 1 and 3 to them or that respondents must use the property for a specific purpose.

Respondents accurately state that appellants' "claim is simply that because they allege that Lot 1 and 3 became somehow enriched as a result of the transaction between the parties they should be granted an equitable lien against those properties. * * * The only lien that appellants can hope to have against the property in question is a lien that will be created as a result of the litigation between the parties, not one that has existed as a result of the dealings between the parties." A lien resulting from the ultimate entry of judgment is not a present lien and "provides no basis for the filing of a notice of lis pendens." *Rehnberg,* 236 Minn. at 234, 52 N.W.2d at 456.

A lis pendens serves warning that title to property is in litigation and impedes a property owner's right to free alienability of real estate. Respondents indicate that construction on lots 1 and 3 is nearly complete and that the owners must soon obtain permanent financing. The notice of lis pendens may cause a delay in securing this financing. If appellants are allowed to file this notice based on an alleged future interest in the property, they would, realistically, be placed improperly in a position to affect negotiations with the property owners.

If done maliciously, filing a false statement on real property may constitute slander of title, subjecting the person filing the notice to civil and sometimes even criminal penalties. *See Kelly v. First State Bank of Rothsay,* 145 Minn. 331, 177 N.W. 347 (1920); *State v. Minniecheske,* 118 Wis.2d 357, 347 N.W.2d 610 (App.1984). While we do not imply a comment on appellants' mo-

tives, the improper filing of a lis pendens cannot be condoned.

The trial court found appellants had "no right to maintain a Notice of lis pendens" because they "assert no right, title or interest in Lots 1 and 3 * * *." This statement seems to us to be precisely correct.

### DECISION

The trial court did not err in discharging appellants' notice of lis pendens because they claimed no existing interest or lien on the property.

Affirmed.