**FINGERHUT CORPORATION,**
Respondent,

v.

**SUBURBAN NATIONAL BANK, a**
**United States Corporation,**
**Appellant.**

No. C2–90–504.

Court of Appeals of Minnesota.

Aug. 21, 1990.

Patrick J. McLaughlin, Mary E. Senkus, Patrick T. Skelly, Oppenheimer Wolff & Donnelly, Minneapolis, for respondent.

Bradley N. Beisel, Scholle and Beisel, Ltd., Minneapolis, for appellant.

Considered and decided by NORTON, P.J., and GARDEBRING and KLAPHAKE, JJ.

## OPINION

NORTON, Judge.

Appellant seeks review of trial court judgment that respondent, which registered its notice of lis pendens against registered property before appellant registered its mortgage, was entitled to priority.

## FACTS

This appeal follows a court trial upon stipulated facts. Appellant Suburban National Bank ("Suburban") and respondent Fingerhut Corporation ("Fingerhut") both lost money to a third party, one Connelly. Connelly was a former employee of Fingerhut who engaged in a scheme to defraud Fingerhut of a large amount of money. Connelly and his wife used some of that money to purchase and improve a home in Carver County, which is the subject real estate of this suit. That real estate has been registered, or Torrens, property since 1956.

In 1986, Fingerhut discovered Connelly's scheme. On August 1, 1986, Connelly wrote Suburban regarding a second mort-

gage he was seeking against the house. He sought $100,000. On August 25, 1986, Suburban entered into an agreement to loan the Connellys $50,000 and receive a mortgage interest in the Carver County real estate. Suburban was unaware of the Fingerhut dispute. On August 28, Fingerhut filed suit against Connelly, claiming that Connelly held the real estate in constructive trust for the benefit of Fingerhut; it also prepared a notice of lis pendens. On August 29, the notice of lis pendens was filed with the registrar of titles in Carver County and duly registered on the certificate of title. On the same day, Mrs. Connelly signed a confirmation of the mortgage agreement and Suburban disbursed the $50,000 loan proceeds to the Connellys. Not until September 2, 1986 was Suburban's mortgage filed with the registrar of titles and duly registered on the certificate of title. Fingerhut did not know that the Connellys had given a mortgage to Suburban.

On April 1, 1987, Fingerhut informed Suburban that the Connellys were trying to sell the premises and that, based on its notice of lis pendens, Fingerhut claimed priority over any interest Suburban had. On April 10, 1987, Suburban responded that it had become aware of Fingerhut's suit against Connelly when Connelly's account records were subpoenaed from Suburban. On December 23, 1987, an order was entered in federal district court concluding, among other things, that the subject property was obtained by the Connellys specifically with money obtained fraudulently from Fingerhut while Connelly was a fiduciary of Fingerhut. The federal court found that the sum of at least $141,000 could be traced directly from funds fraudulently obtained by Connelly from Fingerhut to the purchase and improvement of the real property. The federal court concluded that a constructive trust arose at the time the Connellys became owners of the real estate. The federal court ordered that legal title be vested in Fingerhut as of "on or before August 29, 1986."

In May of 1988, Fingerhut brought this quiet title action against Suburban. Suburban opposed on the grounds that its mortgage was prior to any interest Fingerhut had in the premises. Fingerhut and Suburban entered into an escrow agreement and the property was sold to uninvolved third parties. On November 11, 1989, Fingerhut and Suburban submitted this matter for decision on the stipulated facts, the briefs and oral argument. On February 9, 1990, the trial court entered its judgment concluding that because the subject real estate was registered property and Fingerhut's notice was registered before Suburban's mortgage, Fingerhut's interest was superior. Suburban appeals.

## ISSUE

Did the trial court err in holding that Fingerhut's interest was superior?

## ANALYSIS

Because this case was decided upon stipulated facts, the only issue is whether the trial court erred in its application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### Registered Property

Suburban argues that Fingerhut's notice of lis pendens is not effective to establish a priority against Suburban's earlier executed but later registered mortgage document. The trial court held that because registration is the operative act which creates a legal interest in registered property, the first registered interest was entitled to priority. The relevant statute states in pertinent part:

> No voluntary instrument of conveyance purporting to convey or affect registered land, * * * shall take effect as a conveyance, or bind or affect the land, but shall operate only as a contract between the parties, and as authority to the registrar to make registration. *The act of registration shall be the operative act* to convey or affect the land.

Minn.Stat. § 508.47, subd. 1 (1988) (emphasis added). The necessity of registration to create an interest *in the land* is what distinguishes registered, or Torrens, property from abstract property. *See Mill City Heating & Air Conditioning Co. v. Nel-*

*son,* 351 N.W.2d 362, 364 (Minn.1984) ("[t]he purpose of the Torrens law is to establish an indefeasible title free from any and all rights or claims not registered" (citing *In re Juran,* 178 Minn. 55, 58, 226 N.W. 201, 202 (1929))). *See also United States v. Ryan,* 124 F.Supp. 1, 10 (D.Minn. 1954) (unregistered instruments do not affect Torrens titles or create any interest in land; all titles registered are free from all unregistered rights); *In re Lee,* 171 Minn. 182, 186, 213 N.W. 736, 737 (1927) (mortgage effective against Torrens property only from time of registration).

Suburban argues that because the mortgage agreement was executed before the notice of lis pendens was registered, the lis pendens could not affect the earlier unregistered mortgage interest. We disagree. Every instrument which would affect unregistered land,

> if recorded, or filed with the county recorder, shall, *in like manner,* affect the title to registered land *if filed and registered * * *.*

Minn.Stat. § 508.48 (1988) (emphasis added). Suburban argues that a notice of lis pendens, treated "in like manner" with respect to registered or abstract property, is ineffective against an earlier executed but later recorded mortgage agreement. This assertion turns the law inside out. What must be treated "in like manner" is the *instrument* registered against Torrens property, not the condition of the title. Suburban's argument, that registration is *not* the operative act, would render meaningless much of Minn.Stat. ch. 508.

The question is not whether the notice of lis pendens is effective against registered land; that question has been answered. *See, e.g., Abrahamson v. Sundman,* 174 Minn. 22, 23, 218 N.W. 246, 246 (1928) (lis pendens filed against Torrens property); Minn.Stat. § 557.02 (1988) (a notice of lis pendens may be filed "[i]n all actions in which the title to, or any interest in or lien upon, real property is involved or affected").

■ Instead, the question is whether the mortgage taken by Suburban can be effective before registration. The answer is, with respect to registered property, unequivocally no. That is because "the act of registration shall be the operative act to convey or affect the land." Minn.Stat. § 508.47, subd. 1. Furthermore:

> The owner of registered land may mortgage the same by deed or other instrument sufficient in law for that purpose * * *. Such deed, mortgage, or other instrument * * * shall be registered and take effect *upon the title* only from the time of registration.

Minn.Stat. § 508.54 (1988) (emphasis added). Therefore, before its registration, Suburban's mortgage was effective only as a contract between it and the Connellys; the mortgage could not affect the land. *Id.;* Minn.Stat. § 508.47, subd. 1.

■ Suburban also argues it has an equitable, if not a legal, interest which takes precedence over any interest of Fingerhut. In support of its argument, it advances *Finnegan v. Gunn,* 207 Minn. 480, 292 N.W. 22 (1940). Mr. Finnegan owned Torrens property and gave a mortgage to Mr. Gunn. Gunn never recorded the mortgage. After both men died, Finnegan's widow sought title registered in her name free of that encumbrance; Gunn's widow objected. The supreme court held that, *between the parties,* legal title was held by the mortgagor for the benefit of the mortgagee to the extent of the security. *Id.* at 482, 292 N.W. at 24. Recognizing that the instrument could only operate as a contract, the court held the successor widow obligated to the liabilities of her husband. *Id.* at 482–83, 292 N.W. at 24. The supreme court expressly held, however, that its conclusion "does not create a lien by judicial decision contrary to statute." *Id.* at 483, 292 N.W. at 24.

Suburban relied upon *Finnegan* in arguing to the trial court that an equitable interest could be granted to the holder of an unrecorded instrument against Torrens property. The trial court considered, but distinguished, *Finnegan* noting that it was restricted to its own unique facts which simply did not apply to Fingerhut and Suburban. We agree.

*Lis Pendens and Constructive Trusts*

Suburban also argues that because Fingerhut's notice of lis pendens involved an action for imposition of a constructive

trust, its lien could not be established until *after* judgment in the federal district court case. In support of its position, Suburban relies upon *S.B. McLaughlin & Co. v. Tudor Oaks Condominium Project*, 877 F.2d 707 (8th Cir.1989). *McLaughlin* also involved an action for a constructive trust in which the plaintiff filed a notice of lis pendens. The defendant moved to cancel the notice and enjoin its refiling. The trial court granted the motion to quash and the Eighth Circuit Court of Appeals affirmed, holding that a mere allegation of a constructive trust is not sufficient under Minnesota law to support a notice of lis pendens. In support of its decision, that court construed Minn.Stat. § 557.02 and several decisions of Minnesota courts.

In *Bly v. Gensmer*, 386 N.W.2d 767 (Minn.App.1986), Gensmer owned seven lots and sold two of them, lots 4 and B, to Bly. Bly then learned that Lot B contained restrictions; he sued Gensmer. Bly filed a notice of lis pendens against two *other* lots, lots 1 and 3, owned by Gensmer. Gensmer succeeded in quashing the notice of lis pendens against *lots 1 and 3;* this court affirmed. This court determined that although Bly asserted a constructive trust, he asserted no rights to lots 1 and 3 which could give rise to a constructive trust. Rather, the damages he sought would arise out of the transaction involving lots 4 and B. The only interest Bly would ever have in lots 1 and 3 would be a lien created through litigation and entry of judgment. This court stated that such a lien is not a present lien, is not the result of dealings between the parties involving the particular land against which the lis pendens was filed, and therefore "provides no basis for the filing of a notice of lis pendens." *Id.* at 769 (quoting *Rehnberg v. Minnesota Homes, Inc.*, 236 Minn. 230, 234, 52 N.W.2d 454, 456 (1952)).

In *McLaughlin*, the Eighth Circuit Court of Appeals interpreted *Bly* to hold that a constructive trust *cannot* create a lien until after judgment is granted by a court. The court did not address the language indicating that when a complaint establishes a constructive trust, an equitable lien arises for enforcement of the trust bringing the cause of action within the lis pen-

dens statute. *McLaughlin*, 877 F.2d at 708. In *McLaughlin*, the notice of lis pendens was quashed because McLaughlin did not demonstrate a sufficient proprietary interest in the property. The court does not follow our view of Minnesota law in holding that a claim of a constructive trust can never support a notice of lis pendens. As Fingerhut correctly observes, a notice of lis pendens gives notice of a claim pendente lite. To require a claim be reduced to judgment before a notice of lis pendens could be filed would frustrate the purpose of Minn.Stat. § 557.02.

■ The trial court here distinguished *Bly*, because Fingerhut established a constructive trust by alleging that the Connellys acquired title to the specific subject property through the fraud perpetrated on Fingerhut, of whom Connelly was a fiduciary. We believe that the trial court correctly held that Fingerhut demonstrated a sufficient proprietary interest to support the filing of the notice of lis pendens.

■ Although a constructive trust is not in itself construed as a lien, it establishes an equitable lien for enforcement of the trust which brings the cause of action within the lis pendens statute. *Bly*, 386 N.W.2d at 769. A constructive trust arises whenever legal title to property is obtained through fraud committed by a fiduciary. *Id.*

Fingerhut's complaint alleged that Connelly was a fiduciary of Fingerhut and acquired title to the specific land in question through fraud committed against Fingerhut and that Connelly therefore held the land in constructive trust for the benefit of Fingerhut. Suburban never sought to quash the notice. From the moment of registration of its notice of lis pendens Fingerhut established an equitable lien against the property. That lien was effectively fulfilled by the federal trial court's order that fee simple title had been vested in Fingerhut from at least August 29, 1986. That court held that because of the fraud, the Connellys held the land in trust for Fingerhut from the moment they first acquired it. That court's decision implicitly recognizes that, although the constructive trust arose at the moment the property was acquired by the Connellys, in reg-

istered property, the fee interest of Fingerhut could be vested no earlier than the date of registration, August 29, 1986.

*Notice of Adverse Claim*

 Suburban also argues that Fingerhut's notice of lis pendens is inadequate notice of Fingerhut's claim. The trial court correctly rejected that claim. A notice of lis pendens may be filed in all actions in which the title to, or any interest in or lien upon, real property is involved or affected. Minn.Stat. § 557.02. Suburban argues that Fingerhut should have instead filed a notice of adverse claim. We disagree. The relevant statute states in pertinent part:

> Any person claiming any right, title, or interest * * * may, *if no other provision is made* in this chapter for registering the same, file with the registrar [a notice of adverse claim].

Minn.Stat. § 508.70 (1988) (emphasis added). The notice of adverse claim is available where no other provision is made. The chapter provides for filing and registering a notice of lis pendens. Minn.Stat. § 508.48. Because the notice of lis pendens may be filed against registered property, a notice of adverse claim would not be permitted.

*Binding Effect of Pending Action*

 Suburban argues that it was not a *subsequent* encumbrancer. Suburban's mortgage could not encumber the land until it was duly registered. Minn.Stat. §§ 508.47, subd. 1; 508.48; 508.54. Therefore, Suburban was an encumbrancer subsequent to Fingerhut. Because Suburban registered its mortgage after Fingerhut registered its notice of lis pendens, Suburban was bound by the outcome of that pending litigation. *Howard, McRoberts & Murray v. Starry*, 382 N.W.2d 293, 297 n. 1 (Minn.App.1986).

Suburban also argues that it is not bound by the decision in that litigation because it was not a party. However, a subsequent encumbrancer takes subject to final disposition of a pending action even when it is not a party to the action. *Id.* (citing *Marr v. Bradley*, 239 Minn. 503, 510, 59 N.W.2d 331, 335 (1953)). Furthermore, Suburban had actual knowledge of the pending litigation as early as April 1987 when it ex-

changed correspondence with Fingerhut regarding the litigation. Moreover, Suburban had constructive notice of the litigation from the date the notice of lis pendens was recorded. Minn.Stat. § 507.32 (1988).

 Suburban also argues that it gave the mortgage by relying on the state of the title on the day the mortgage was executed, August 25, 1986. Because that mortgage loan agreement contained a three-day cooling-off period, during which the Connellys could unilaterally cancel the agreement, Suburban did not disburse the proceeds until after Mrs. Connelly signed a confirmation of that agreement on August 29, 1986. The notice of lis pendens was registered at 9:00 a.m. on August 29, 1986. Suburban could have protected its interest by registering its mortgage before the loan proceeds were disbursed.

### DECISION

The trial court correctly determined that Suburban's later registered mortgage was ineffective against Fingerhut.

Affirmed.