**FIRST CONSTRUCTION CREDIT, INC., Respondent,**

v.

**SIMONSON LUMBER OF WAITE PARK, INC., Appellant.**

No. C0–02–2002.

Court of Appeals of Minnesota.

June 10, 2003.

Brad A. Sinclair, Serkland Law Firm, Fargo, ND, for respondent.

David J. Meyers, Gerald W. Von Korff, Rinke–Noonan, St. Cloud, MN, for appellant.

Considered and decided by TOUSSIANT, Chief Judge, KLAPHAKE, Judge, and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant Simonson Lumber of Waite Park, Inc. (Simonson Lumber) foreclosed a mortgage and bought the property at the foreclosure sale. Respondent First Construction Credit, Inc. (First Construction) later redeemed the property from Simonson Lumber. To redeem the property, First Construction paid Simonson Lumber $14,000 more than was necessary to redeem the property from the foreclosed mortgage. It did so because Simonson Lumber alleged that it held a purchase agreement for the property that created an additional $14,000 security interest in that property. Because First Construction believed that the purchase agreement did not create an additional secured interest in the property, First Construction paid the additional $14,000 under protest.

First Construction then brought an action seeking a district court order to determine the rights and priorities of redemption from the sheriff's sale. In dispute was whether the original purchase agreement created a second lien or mortgage upon the real estate and, hence, whether First Construction had to pay the additional $14,000 to fully redeem the real estate. First Construction also wanted the district court to cancel the recorded notice of lis pendens filed by appellant Simonson Lumber upon the redeemed real estate. Finally, First Construction sought costs, disbursements, and attorney fees.

The district court determined that the purchase agreement did not constitute a second lien or mortgage upon the real estate and awarded First Construction a judgment against Simonson Lumber for $14,000 (plus pre-judgment interest), which constituted First Construction's overpayment on redemption. The district court also canceled the notice of lis pendens and awarded First Construction $750 in attorney fees. After the district court denied Simonson Lumber's motion for reconsideration, Simonson Lumber brought this appeal. On appeal, Simonson Lumber argues that the purchase agreement created a second lien or mortgage and, therefore, was secured by the real estate. First

Construction also challenges the amount of attorney fees it was awarded.

### FACTS

First Construction financed a construction project for Oscarson Development Company (Oscarson Development), who bought unimproved real estate from the Lutheran Church of the Cross (the church) for $196,000. Oscarson Development intended to build 28 townhouses on the property, and the purchase agreement the parties signed on May 4, 1996, provided that, upon the sale of each unit, Oscarson Development would pay $7,000 to the church and would deposit $1,000 in escrow. The escrow account was to be used for construction expenses if the church elected to build a community center for the townhouse residents.

To secure payment of the purchase price of the land, Oscarson Development gave the church a purchase-money mortgage. Oscarson Development also signed a promissory note for the purchase price, and Glen Oscarson personally guaranteed the note. On May 4, 1996, the parties contemporaneously signed the mortgage, note, guarantee, and purchase agreement that included a non-merger clause. The church recorded the mortgage and the purchase agreement in August of 1996.

In return for financing the project, First Construction received a second mortgage on the real estate. Subsequently, Oscarson Development gave a third mortgage to appellant Simonson Lumber, a material supplier, in exchange for Simonson Lumber's release of mechanics' liens Simonson Lumber filed because Oscarson Development failed to pay for materials. Oscarson Development also defaulted on the loan from First Construction.

With 14 lots unsold, there were three mortgages against the property. The church assigned all of its interest in the mortgage and purchase agreement to Simonson Lumber, who then foreclosed the church's purchase-money mortgage. As a lienor, Simonson Lumber bid at the foreclosure sale the mortgage balance plus the $14,000 payable into escrow upon sale of the remaining 14 lots, and thereby purchased the property.

Following the foreclosure sale, First Construction started two successive lawsuits against Simonson Lumber. In the first action, the district court determined that the amount necessary to redeem the purchase-money mortgage was the mortgage balance and that the purchase agreement was not secured by that mortgage. There was no appeal in that case.

First Construction then sought to redeem the purchase-money mortgage. But Simonson Lumber then claimed that the $14,000 for the 14 unsold lots was an obligation under the purchase agreement and that the purchase agreement constituted a lien against the property. First Construction paid the primary redemption amount and, under protest, the additional $14,000.

In its second lawsuit, First Construction sought, among other relief, the district court's declaration that the purchase agreement is not a lien against the property and, therefore, First Construction is entitled to judgment against Simonson Lumber for its redemption overpayment of $14,000, with prejudgment interest. During the pendency of this action, Simonson Lumber filed a notice of lis pendens against the property. First Construction moved for an award of attorney fees, contending that Simonson Lumber filed the notice of lis pendens in bad faith.

Both parties moved for summary judgment. The court denied Simonson Lumber's motion and granted First Construction's motion, ruling that the "May 4, 1996 purchase agreement does not constitute a

second lien/mortgage upon the real estate." The court also awarded the $14,000 redemption overpayment with prejudgment interest and $750 in attorney fees to First Construction. · Simonson Lumber appealed, and First Construction seeks review of the amount of the attorney fee award.

## ISSUES

I. Does a recorded purchase agreement for real estate, which contains a non-merger clause, create a valid, enforceable second lien or mortgage upon that real estate without language that shows a specific intention to do so?

II. Did the district court abuse its discretion in awarding respondent attorney fees of $750 after concluding that appellant filed a notice of lis pendens in bad faith?

## ANALYSIS

### I.

Simonson Lumber concedes that the purchase-money mortgage is not security for the payment of the $14,000 escrow fund. Rather, Simonson Lumber argues that the recorded purchase agreement, by virtue of its non-merger clause, creates either a vendor's lien or an equitable lien that secures payment of the escrow fund. The district court concluded that the purchase agreement did not create a security interest and thus granted summary judgment in favor of First Construction.

█ In reviewing the grant of a summary judgment, this court determines whether there exists a genuine issue of material fact for trial and whether the district court erred in its application of the law. *Schons v. State Farm Mut. Auto. Ins. Co.*, 621 N.W.2d 743, 745 (Minn.2001). The parties do not dispute the material facts. Thus, we review the legal issues de novo. *Moreno v. Crookston Times Print-*

*ing Co.*, 610 N.W.2d 321, 327 (Minn.2000). Among those legal issues is the district court's interpretation of the meaning and legal effect of the purchase agreement for the sale of the property in question. Contract interpretation is a legal issue that we review de novo. *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 643 (Minn.App.1985), *review denied* (Minn. June 24, 1985).

█ The purchase agreement is not ambiguous. It expressly governs the sale of real estate for the price of $196,000, to "be secured by a first mortgage in favor of [the church] on the property." The purchase agreement is accompanied by a promissory note in which the vendee promises to pay $196,000. The promissory note is accompanied by a mortgage in which the mortgagor is obligated to pay a sum "not to exceed a principal amount of * * * ($196,000.00) * * *."

The purchase agreement also requires payment of $1,000 per unit at the time the unit is sold, to be applied toward the construction of a community center. The money is to be deposited in an escrow fund until the church elects either to build or not to build the community center. The purchase agreement treats this obligation separately from the obligation to pay the purchase price and does not include the escrow fund within the security of the mortgage. Nothing in the language of the purchase agreement provides for any security for the obligation to pay money into the escrow fund.

The purchase agreement includes a non-merger clause that provides for the survival of the contract obligations beyond the closing and the conveyance of title:

All covenants and agreements herein made, including the terms of this Purchase Agreement itself, shall not merge, but shall survive the closing hereunder

and shall constitute conditions and obligations of the parties hereafter.

Because the obligation to pay into the escrow fund is one of the obligations provided in the purchase agreement, the parties' intent is clear that it will continue to be a contractual duty until it is satisfied, despite the closing of the sale. But contractual obligations may be secured or unsecured. The parties clearly and expressly intended to secure the payment of the purchase price. And it is clear that the parties did not expressly secure collection and payment of the escrow funds. Thus, if the escrow is secured, it is secured only by implication or by operation of law.

Simonson Lumber argues that the escrow is secured by an implied lien. Caselaw has used the terms "vendor's lien," "equitable lien," and "equitable mortgage" as synonymous. *See Trondson v. Janikula,* 458 N.W.2d 679, 682 (Minn.1990) (noting that *Kurz v. Gramhill,* 269 N.W.2d 68, 71 (Minn.1978) "use[s] the terms equitable lien and equitable mortgage interchangeably"); *Grace Dev. Co., Inc. v. Houston,* 306 Minn. 334, 335, 237 N.W.2d 73, 75 (1975) (equating vendor's lien with implied equitable lien upon real property).

■ A "vendor's lien" is a concept applicable only to sales of real estate. *Peters v. Tunell,* 43 Minn. 473, 475, 45 N.W. 867, 868 (1890). It is a lien created by equity rather than contract or statute. *Soukup v. Wenisch,* 163 Minn. 365, 367, 204 N.W. 35, 35 (1925). Its historical purpose was to avoid "the unjust rule of early common law by which land was free from the claims of simple contract creditors." *Hammond v. Peyton,* 34 Minn. 529, 531, 27 N.W. 72, 72 (1886). A vendor's lien is customarily defined as "an implied equitable lien upon real property for the amount of the unpaid purchase price." *In re Butler,* 552 N.W.2d 226, 229 (Minn.1996).

It exists independently of any express agreement at the time of the conveyance and without regard to the absence of the grantor's intention to claim it.

*Grace Dev.,* 306 Minn. at 335, 237 N.W.2d at 75. It is not generally assignable. *Law v. Butler,* 44 Minn. 482, 486–87, 47 N.W. 53, 54 (1890). And although Minnesota courts recognize and may enforce it where it applies, a vendor's lien is not favored. *Hecht v. Anthony,* 204 Minn. 432, 437, 283 N.W. 753, 755 (1939). "The policy of the law favors a requirement that there be written and recordable evidence of interests in land." *Soukup,* 163 Minn. at 366, 204 N.W. at 35. When presented with opportunities to expand the doctrine, Minnesota courts have specifically declined to extend the theory of vendor's lien. *Brooks v. Thorne,* 176 Minn. 188, 191, 222 N.W. 916, 918 (1929); *Soukup,* 163 Minn. at 365, 204 N.W. at 35.

■ An equitable mortgage can be implied when parties to a loan transaction intend that there be security for the loan: "An equitable mortgage is created when the parties to the transaction intended it to be essentially a security transaction." *First Nat'l Bank v. Ramier,* 311 N.W.2d 502, 503 (Minn.1981).

In *Ramier,* the bank lent money to a borrower on the borrower's unsecured promissory note. *Id.* After the borrower's death, the bank asked the surviving spouse to pay the note. *Id.* When she denied liability, the bank sought to have the district court declare that the spouse was unjustly enriched by the loan and that the bank was entitled to an equitable lien against the homestead. *Id.* On appeal, the supreme court looked to the transaction between lender and borrower and the documents employed in the transaction and held it proper to deny relief to the bank because

[a]n examination of the documents of record discloses no indication that either of the parties, the bank or the decedent, intended the loan agreement to be a second obligation and in fact, the renewal note drafted by the bank conclusively states that it is an unsecured loan.

*Id.* at 503–04.

Similarly, there is nothing in the documents employed in the sale of the church property to indicate that the parties intended to secure any obligation, other than the payment of the purchase price. The fact that paragraph 2a of the agreement ties the mortgage only to the purchase price and that paragraph 2b, immediately following, provides no security for the escrow account compels the conclusion that the parties did not intend a security transaction as to the escrow.

Beyond the clear language of the documents involved in the transaction and the manifested intent of the parties, there are other plausible reasons that the purchase agreement should not be held to create an equitable lien in the escrowed funds.

The escrow fund did not pertain to the real estate that was sold. Rather, the community center was to be built on land that the church owned, albeit the center would be for the townhouse owners' use. Thus, the escrow fund was personal property as to which no equitable lien could attach. Furthermore, there is no unjust enrichment or other inequity that results from a treatment of the escrow obligation as unsecured. Simonson Lumber is not deprived of its remedy for breach of contract and may also avail itself of any remedy provided in the purchase agreement that survived the closing.

Finally, Simonson Lumber's reliance on *Rosendahl v. Mudbaden Sulphur Springs Co.*, 144 Minn. 361, 175 N.W. 609 (1919), is misplaced. The Rosendahl court stated "[t]hat it was the intention of both parties that the unpaid purchase price should be a lien is not open to serious question." *Id.* at 362–63, 175 N.W. at 609. The Rosendahl court drew its conclusion from the express language of the purchase agreement. Here, the parties expressed the opposite intention, namely, that there be no lien to secure the escrow fund. The district court did not err when it determined that the purchase agreement did not constitute a lien upon the real estate.

## II.

Simonson Lumber argues that the district court erred in awarding attorney fees because Simonson Lumber did not file a notice of lis pendens in bad faith. The district court has the discretion to award costs, disbursements, and reasonable attorney fees if a party acted in bad faith. *Tran v. Estate of Ditzler*, 411 N.W.2d 6, 9 (Minn.App.1987).

"A lis pendens serves warning that title to property is in litigation and impedes a property owner's right to free alienability of real estate." *Bly v. Gensmer*, 386 N.W.2d 767, 769 (Minn.App. 1986). A notice of lis pendens is filed properly only if a complaint has been filed "in which the title to, or any interest in or lien upon, real property is involved or affected." Minn.Stat. § 557.02 (2002). "If the cause of action and notice of lis pendens involves a lien, the lien must exist at the time the action is commenced." *Bly*, 386 N.W.2d at 768 (citation omitted). If the notice of lis pendens is filed with malice, the filing of a false statement on real property may constitute slander of title, which could subject the person filing to civil or criminal penalties. *Id.* at 769.

The district court concluded that Simonson Lumber acted in bad faith because it had prompt notice that the filing was improper, yet Simonson Lumber failed

to remove the lis pendens until the day of oral arguments for the summary judgment motions in this case. The court also determined that bad faith existed because Simonson Lumber filed the notice of lis pendens without verifying ownership of the real property following a proper redemption by First Construction and First Construction's subsequent sale of the property. The filing of a notice of lis pendens created a cloud upon the title to the property.

In this case, because Simonson Lumber filed the notice of lis pendens after First Construction had already sold the property, the filing was improper. Neither Simonson Lumber nor First Construction had any interest in the property at that time. Simonson Lumber's failure to promptly remove the notice of lis pendens arguably can be construed as bad faith.

First Construction argues that the amount of the attorney-fee award is insufficient because Simonson Lumber acted in bad faith both in claiming that the purchase agreement constituted a second lien on the property as well as by filing the notice of lis pendens. We find nothing in the record to support that Simonson Lumber acted in bad faith in claiming the purchase agreement was a second lien. In light of the discretion afforded to the district court in awarding attorney fees, we find that the district court acted within its discretion.

### DECISION

The district court properly granted the summary judgment motion in favor of respondent upon concluding that the purchase agreement for the sale of real property did not create a second lien or mortgage on that property.

**Affirmed.**